WILLIAM HARKER, B. M. CAMPBELL AND JOHN CAMPBELL, *vs.* JOHN E. DEMENT.—*June* 1850.

The defendant in an action of trover, cannot prove that the title to the property in dispute was not in the plaintiff, but was at the time of the conversion outstanding in a third party, with whom defendant had no connection or privity, either to defeat the action or in mitigation of damages.

A defendant in trover cannot set up property in a third person, without showing some title, claim or interest in himself, derived from such person.

In an action of trespass or trover by a termor against his reversioner, for an unauthorised interruption of his possession during the term, the measure of damages is the actual loss sustained by the lessee.

But in such an action against a stranger and wrong doer, the termor is treated as the absolute owner of the property, and he is entitled to recover its full value.

The termor being bound to restore the property to the person from whom he obtained it, or to stand responsible in damages for its full value, has the right to recover its full value from a stranger, who has wrongfully deprived him of it.

Upon the ground of ulterior responsibility, the borrower of a chattel may maintain an action of trespass or trover against a wrong doer, who has

violated his possession, and recover the full value of the property of which he was dispossessed.

A pawnee of goods may maintain trespass against a stranger, who takes them away and recover their whole value in damages, though they were pledged to him for less, because he is answerable for the excess to the owner.

There is no analogy between the case of a term'or suing for property wrongfully taken from his possession, and that of a tenant in common, or part owner of a chattel suing for his proportionate share or interest. The latter, unless a plea in abatement is interposed, may recover in trover or trespass his aliquot share, but he is under no ulterior responsibility to his co-tenant.

If a defendant in trover or trespass fails to plead in abatement to the suit of one tenant in common, to recover his interest in the chattel, he is precluded from interposing such a plea to a second suit, by another such tenant for his share.

The declarations of a person exercising authority that he possesses it, can never be received as evidence of the fact of his authority.

Conversion is the wrongful asportation of a chattel with the intent to appropriate it to the taker's use, and when such asportation and intent are proved, the conversion is established, no matter under what impression the taker may have acted.

The motive by which a defendant was influenced in converting to his own use the property of another, is only admissible when introduced to repel an attempt by the plaintiff to recover from him, in an action of trover, exemplary damages.

The establishment of the fact, that the defendant thought himself the *bona fide* purchaser of the slaves, and under this belief acted in good faith in seizing and taking them from the plaintiff, would not impose upon the latter the necessity of proving a demand and refusal.

Parol proof of what occurred at the trial of a cause between certain parties, is not admissible, unless preceded by the production of the record of the case to which such testimony referred.

APPEAL from *Baltimore* county court.

This was an action of *trover*, instituted by the appellee against the appellants, on the 24th of April 1846, to recover the value of two negro slaves, *Wood* and *Henry*, mentioned in the declaration. Plea, *not guilty*.

1ST EXCEPTION. The plaintiff proved by *Goodrick*, that in March 1846, plaintiff was in possession of a farm and negroes in *Charles* county, which were under the management of witness, as his overseer; that on the 13th March, 1846, *John*

*Campbell,* one of the defendants, came to this farm, (in the absence of the plaintiff,) accompanied by *Mr. Edmund Briscoe* and the sheriff of *Charles* county; that *Briscoe* then and there bargained with *Campbell* for the sale of the negroes, *Wood* and *Henry*, in suit, then on said farm, in possession of the plaintiff; that no money was then paid, but *Campbell* handcuffed the negroes and carried them away. The defendants' counsel then, on cross-examination, asked witness whether said negroes were not the property of *Richard Dement's* estate, and avowed his purpose to be to give such evidence to defeat plaintiff's claim, or to offer the same in mitigation of damages. But the court, (ARCHER, C. J., and LE GRAND, A. J.,) refused to allow such evidence to be given for either of such purposes, unless the defendants proposed to follow it up, with evidence that they acted under authority derived from the representatives of *Dement's* estate, which offer defendants' counsel declined. To which opinion of the court the defendants excepted.

2ND EXCEPTION. The defendants then asked said witness, on cross-examination, to state all the conversation which occurred at the time of taking said property, and whether *Mr. Briscoe* did not then state that he came and took said negroes by the authority of the plaintiff, for the purpose of paying a debt of plaintiff, for which he, the defendant, was security. This was offered as part of the transaction, it having taken place at the time of the taking. To the admissibility of which the plaintiff objected. The court sustained the objection, and defendants excepted.

3RD EXCEPTION. The defendants then called *Robert J. Brent* as a witness, and asked him if he was present at the trial in *Charles* county court, between *Edmund Briscoe,* the owner of said negroes, and the plaintiff in this case, in which the counsel of *Dement*, without pleading it, set up orally, as a defence or set off to plaintiff's claim, the sale of the negroes in question by *Briscoe*, and the receipt of the purchase money by him; and whether the same was not submitted to the jury, in the argument by plaintiff's and defendants' counsel. To this question plaintiff objected, and the court sustained the ob-

jection, and refused to let any part of such question be put, unless it was preceded by record evidence of the existence of a suit in *Charles* county court, wherein *Briscoe* was plaintiff, and the plaintiff in this action was defendant. The defendants excepted.

The jury rendered a verdict for the plaintiff, and assessed the damages at $1,189.89. The defendants then moved for a new trial:—1st. Because the damages are excessive. 2nd. Because of newly discovered testimony. And 3rd. Because of surprise and mistake. The plaintiff released $210.50, part of the damages, and the court overruled the motion for a new trial, and gave judgment for the plaintiff for the sum of $970.39, and costs. The defendant appealed.

The cause was argued before SPENCE, MAGRUDER, MARTIN and FRICK, J.

RICHARDSON, attorney general, for the appellants, contended that the court erred in rejecting the evidence offered in the *first* exception, because it tended to prove that the appellee was merely a termor of the slaves in question; that there was a reversionary interest outstanding, and that the evidence ought to have been admitted in mitigation of damages.

That the court erred in excluding the evidence offered in the *second* exception :

1st. Because the interrogatory proposes to elicit the *whole* of a conversation between one of the defendants and one *Briscoe*, part of which had been offered in evidence by plaintiff below and now appellee.

2nd. Because the declarations of *Briscoe* sought by the inquiry, would serve to illustrate and explain an *act*, which act the plaintiff had offered in evidence, and through which he sought to recover, viz: the sale of *Briscoe* to *Campbell;* and

3rd. Because the proof offered by the plaintiff, when taken in connection with an affirmative answer to the inquiry propounded in the interrogatory, would show, that *Campbell* was a *bona fide* purchaser; and therefore, though the sale was made

by *Briscoe*, without authority, *Campbell* was not a *mere wrong doer*, and therefore a demand and refusal was necessary to maintain the action.

R. J. BRENT and HORSEY, for the appellee :

On first exception we contend, that the defendant cannot be allowed to introduce an outstanding title in a stranger, to defeat an action by a possessor of personal chattels, which have been *tortiously* converted.

On second exception, that we had only introduced the bargaining for the negroes between *Briscoe* and *Campbell*, and the caption of the negroes by *Campbell*, in order to show a conversion by *Campbell*, and therefore it was not competent for the defendants, on cross-examination, to introduce *Briscoe's* declarations touching his authority :

1st. Because they were not shown to be made at the time of the bargaining, but only of the caption of the negroes.

2nd. Because these declarations were not evidence of authority to commit the trespass.

3rd. Because the declarations were immaterial and irrelevant.

MARTIN, J., delivered the opinion of this court.

This was an action of trover. At the trial of the cause below, the plaintiff proved by a competent witness, that the slaves in controversy were upon his farm and in his possession, under the management of the witness, as his overseer, on the 13th of March, 1846; and that on that day, *John Campbell*, one of the defendants, came to the farm, in company with one *Briscoe* and a *Mr. Stuart*, the sheriff of *Charles* county, and that *Campbell*, after bargaining with *Briscoe* for the sale of these slaves, took forcible possession of them and carried them away.

In this condition of the case, the defendants, on cross-examination, asked the witness whether these slaves were not the property of *Richard Dement's* estate, and avowed their purpose to be to give such evidence to defeat the plaintiff's claim, or to offer the same in mitigation of damages. This evidence was objected to. The court, we find, refused to admit it, for

either of the purposes for which it was offered, unless the defendants proposed to follow up the testimony, with evidence that they acted under authority derived from the representative or representatives of *Richard Dement's* estate. The counsel for the defendants having declined to follow up the testimony as proposed by the court, it was rejected, and the ruling of the court upon this point of evidence, forms the subject of the *first* exception.

The ruling of the court below upon the question raised for their consideration on this branch of the case, was unquestionably correct. The defendant having failed to connect himself with the estate of *Richard Dement*, occupied the position of a *mere tort feasor*, who had invaded the possession of the plaintiff without authority, and under such circumstances it is very clear, that he could not be permitted to prove, that the title to the property in dispute was not in the plaintiff, but was, at the time of the conversion, outstanding in a third party, with whom he had no connection or privity, to defeat the action, or in mitigation of damages. In the case of *Duncan vs. Spear*, 11 *Wend.*, 56, the Supreme Court of *New York* correctly ruled, that a defendant in trover cannot set up property in a third person, without showing some title, claim or interest in himself, derived from such person. And that it was not competent for the defendants to place themselves under the protection of a title to this property residing in the estate of *Dement*, without showing that they acted under authority derived from the representatives of that estate, and thus relieving themselves from the imputation of being mere wrong doers, is a legal proposition, which has been considered as settled and at rest, in *Westminster Hall*, since the leading case upon this subject, of *Armory vs. Delamirie*, decided by *Chief Justice Pratt*, and reported in 1 *Strange*, 504. In that case it was manifest from the evidence, that the real property was in a third person; but as that property was not connected with the defendant by transfer or authority, he was not allowed to rely upon it, nor to shelter himself from responsibility under it; and the finder of the jewel, a chimney-sweeper's boy, in *London*, recovered from the con-

vertor, in an action of trover, the full value of the chattel. The cases of *Sutton vs. Buck*, 2 *Taunt.*, 302, and *Burton vs. Hughes*, 2 *Bingh.*, 173, stand upon this principle.

We did not, however, understand the counsel for the appellant as controverting the correctness of this general proposition; but his point was, that the defendants should have been permitted to show, that the plaintiff was in the possession of these slaves, at the time of the alleged conversion, only as a termor, the reversionary interest residing in the estate of *Dement*, as the lessor, not of course in bar of the action, but in mitigation of damages. The proposition presented by the counsel for the appellant is, that in an action of trover by a termor of a chattel against a wrong doer, who has converted it to his own use, the measure of damages is not the full value of the property at the time of the conversion, but its value to the termor, and that, therefore, it was proper in this case to show, that the relation of lessor and lessee existed between the plaintiff and the estate of *Dement*, that the jury might give only such damages as would cover the injury sustained by the plaintiff for the deprivation of the services of the slaves in dispute, for the unexpired term.

This proposition cannot be maintained. In an action of trespass or trover by a termor against his reversioner, for an unauthorised interruption of his possession during the term, the measure of damages would be the actual loss sustained by the lessee. But in an action against a stranger and wrong doer, who has been guilty of an asportation or conversion of the property, the plaintiff is treated as the absolute and unqualified owner of the property, and he is entitled to recover its full value.

By the common (differing in this respect from the *Roman*,) law, the hirer of a chattel acquires, by virtue of the contract, a special property in the thing during the continuance of the term. The hirer is bound by the implied obligations of the contract to restore the thing hired, when the term for which it was hired has determined. *Story on Bailm't, sec.* 414. And although cases may occur in which he would be absolved from this obligation, yet it has been expressly decided, in *Gor-*

*don vs. Harper*, 7 *Term Rep.*, 14, that a lessee cannot justify his not returning the goods to the landlord at the end of his term, because a stranger had committed a trespass upon him by taking them away. The language of *Mr. Justice Lawrence*, in *Gordon and Harper*, is :

"The tenant is bound to restore the goods to the landlord at the end of his term, and could not justify his not doing so, because a stranger had committed a trespass upon him by taking them away."

The law has placed, at the command of the termor, the power of vindicating his rights to the property, if they have been violated, and he is bound to use it. And as he is bound to restore the property to the person from whom he obtained it, or to stand responsible in damages for its full value, he has the right to recover its full value from a stranger who has wronged him. Upon this ground of ulterior responsibility, the borrower of a chattel may maintain an action of trespass or trover against a wrong doer who has invaded his possession, and it must be obvious, that unless he was allowed to recover the full value of the thing of which he was despoiled the remedy placed at his disposal, would not accomplish the purpose for which it was given. In *Story on Bailm't*, sec. 280, the author says :

"But, notwithstanding the borrower has no special property in the thing loaned, still it seems, that if the injury done by a stranger is of such a nature, that the bailee would be liable over to the lender for it, the latter may maintain an action of trespass, and even of trover, founded upon his possession, to recover damages; for the mere possession of property, without title, is sufficient against a wrong doer."

In the case of *Lyle vs. Barker*, 5 *Binney*, 457, it was held, that a pawnee of goods could maintain trespass against a stranger, who takes them away, and recover the whole value in damages, though they were pledged for less, upon the ground, that he is answerable for the excess to the person who has the general property.

*Mr. Chief Justice Tilgman*, when considering this question of damages, on a motion for a new trial, said :

" The point was very little argued, and no authorities cited, (at the trial before the jury,) so that my opinion was, upon a general recollection of the principle, that he who has a special property in chattels, being answerable to the general owner, unless he takes good care of them, may recover the whole in damages against a wrong doer, who takes them away. Upon subsequent reflection and reference to the authorities, I am satisfied that the charge was right.'' He then refers to the case of *Heyden vs. Smith*, 13 *Coke's Rep.*, 69, where it is stated :

"That he who hath a special property in goods, shall have a general action of trespass against him who hath the general property, and upon the evidence, damages shall be mitigated; but clearly the bailee, or he who hath the special property, shall have a general action of trespass against a stranger, and shall recover all in damages, because that he is chargeable over.''

In *White vs. Webb*, 15 *Connect. Rep.*, 302, an action of trover was brought by a second mortgagee against a stranger. It was insisted that the plaintiff could only recover the value of his interest, that is, its value after deducting the amount due on the prior mortgage. It was ruled otherwise. The court said:

"If the suit is brought by a bailee or special-property man against the general owner, then the plaintiff can recover the value of his special property only; but if the suit is against a stranger, then he recovers the value of the property and interest thereon according to the general rule, and holds the balance beyond his own interest, in trust for the general owner.''

We think, therefore, that the ruling of the court below was correct in the *first* exception, in whatever aspect the question presented for their consideration is to be viewed.

There is no analogy between this case and the case of a tenant in common, or part-owner of a chattel, suing for his proportionable share or interest. Unless a plea in abatement is interposed, a tenant in common may recover in trover or trespass his aliquot share or proportion of interest in a chattel, but the rule that gives him the right to sue, confines him to his

own interest or share. He is under no ulterior responsibility to his co-tenant; the co-tenant may recover from the same defendant his interest in the chattel, and in this second action, the defendant is precluded from interposing a plea in abatement. In the case of *Sedgworth vs. Overend*, 7 *Term Rep.*, 279, this point was expressly adjudged.

The *second* exception relates to the question of conversion.

It will be recollected, that the plaintiff proved that *John Campbell*, one of the defendants, entered upon his farm, and after bargaining with *Briscoe* for the purchase of these slaves, took possession of them by force, without the consent or knowledge of the plaintiff, and for the purpose, as the jury might have found, of appropriating them to his own use. This act standing alone and unexplained, had unquestionably all the elements of a tortious conversion.

The defendants, however, on the cross-examination of the plaintiff's witness, proposed to prove that *Briscoe*, at the time of the taking of the property, stated that he came and took the said slaves by the authority of the plaintiff, for the purpose of paying a debt of plaintiff, for which he, the defendant, was security.

No proof *aliunde*, was offered to show that the plaintiff had invested *Briscoe* with authority to sell these slaves, and it is a clear principle, that even if *Briscoe* had been introduced as a witness, the fact of his authority could not have been established by his own declarations. In the case of *James vs. Stookey*, 1 *Wash. C. C. Rep.*, 330, it was held, that the declarations of a person exercising authority, that he possesses it, can never be received as evidence of the fact of his authority. But the counsel for the appellants contended, that if the declarations of *Briscoe* had been received, they would have shown that *Campbell* was a *bona fide* purchaser of this property; that although the sale was made by *Briscoe* without authority, that the defendant was not a mere wrong-doer, and that therefore, a demand and refusal was necessary to maintain the action.

This position cannot be sustained. The definition of a conversion, so far as it is applicable to this case, is the wrongful

asportation of a chattel, with the intent to appropriate it to the taker's use, *Step. N. P.*, 2684; and when those two facts are found to exist, that is, the wrongful taking, and the purpose of the defendant to devote the property to his own use, the tortious conversion is established, no matter under what impression he may have acted. The question, whether a party is to be treated as a wrong-doer and tortious convertor, depends upon the inquiry, whether the asportation of the property was unauthorised, and made by him with the intention of appropriating it to his own use; and not upon the motive by which he was actuated, in perpetrating the act. The motive by which a defendant was influenced in converting to his own use the property of another, is only material, and admissible, when it is introduced to repel an attempt by the plaintiff to recover from him in an action of trover, exemplary damages. In *Cromwell vs. Owings*, 7 *H. & John.*, 60, the Court of Appeals said:

"Whenever the goods of a stranger are wantonly taken, or after due notice being given that they are his property, the party injured, if he chooses not to wait, and replevy them from the purchaser after sale, may always attain ample redress in exemplary damages, in an action of trespass or trover, at the hands of a jury. And in cases of mere *mistake*, without any intention to do wrong, less than the full value of the goods taken, will seldom be recovered."

In the case of *McCombie vs. Davies*, 6 *East.*, 538, the defendant took an assignment of the *tobacco* from *Coddan*, in good faith, under the impression that it was the property of *Coddan*, and without any knowledge that it had been purchased by him for the plaintiff, as a broker. It is true, that the defendant refused, upon the request of the plaintiff, to deliver the tobacco to *Coddan*, as the plaintiff's broker. But *Lord Ellenborough* did not consider the refusal of the defendant to give the order as required, as evidence of a conversion, under the circumstances of the case. He placed the conversion upon the ground that the defendant assumed dominion over the property, and took it by the wrongful act of the broker. The coun-

3    v.9

sel for the plaintiff, after insisting that the defendant's refusing to make the transfer, was evidence of a conversion, contended that "at any rate the assuming dominion over it, and taking it by the wrongful act of the broker, was a conversion." And *Lord Ellenborough* said:

"The latter was the true ground to put the plaintiff's case upon; and if the case had been so presented to him at the trial, there probably would have been no non-suit; but it was put upon the ground that the not giving an order for the delivery of the tobacco from the *King's warehouse,* was in itself a conversion, in which I could not concur; not conceiving that the mere not doing an act, was a conversion. But taking the case higher up upon principle, I think that the defendant's acts amount to a conversion. According to *Lord Holt,* in *Baldwin vs. Cole,* the very assuming to oneself the property and right of disposing of another man's goods, is a conversion; and certainly a man is guilty of a conversion who takes my property by assignment from another who has no authority to dispose of it; for what is that but assisting that other in carrying his wrongful act into effect?"

In *Stephens and others,* assignees of *Spencer against Elwall,* 4 *M. & Sel.,* 259, it appeared that the bankrupts, after their bankruptcy, sold the goods in question to one *Deane,* to be paid for by bills on *Heathcote,* who had a house of trade in *London,* and for whom *Deane* bought the goods. *Heathcote* was in *America,* and the defendant was his clerk, and conducted the business of the house. *Deane* communicated to the defendant information of the purchase on the day it was made, and the goods were afterwards delivered to the defendant, and he disposed of them by sending them to *America* to *Heathcote.* This was held to be a conversion by the clerk, although he acted with the most perfect good faith, in entire ignorance of the bankruptcy, and exclusively for the benefit of his employer. A demand was made upon him by the plaintiffs two years after the purchase, but the conversion was not placed upon this ground. *Le Blanc, J.,* said there was a conversion by the defendant long before the demand.

The statements and declarations of *Briscoe*, who was not a party to the suit, were clearly inadmissible. They were obnoxious to all the objections that can be urged against hearsay evidence; but we think, for the reasons we have assigned, that if *Briscoe* had been introduced as a witness, it would not have been competent for the defendants to have proved the fact which they proposed to establish by his declarations. As that fact, even assuming it to be true, was immaterial, as it did not impose upon the plaintiff the necessity of proving a demand and refusal. It is very clear, we think, on principle, as well as upon the authorities quoted by *Mr. Greenleaf* in the second volume of his treatise on evidence, *sec.* 642, that if the defendant seized upon these slaves and removed them with the intention of converting them to his own use, he was in legal contemplation, guilty of a conversion, though in what he did, he may have acted in good faith, and under the mistaken belief that *Briscoe* was authorised to sell them.

The opinion of the court below was therefore correct as expressed in the *second* exception.

The ruling of the court in the *third* exception, was also correct, and was not controverted by the counsel for the appellants. It is very clear that the testimony proposed to be offered in that exception, was not admissible, without producing the record of the cause to which it referred.

JUDGMENT AFFIRMED.