(Decided 11th June, 1889.)

---

# THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* WILLIAM H. CARR.

*Railroad Company—Action of Tort—Contract for Carriage of Passengers—Rules and Regulations—Liability for Mistake of Agent—Measure of Damages—Instructions to Jury.*

The holder of a ticket entitling him to a passage on a railroad train sued the railroad company in *tort* to recover damages for the refusal of the defendant's gate-keeper to permit him to pass through the gate in order to have access to the train, and for unnecessary force used in preventing him from doing so. HELD:

1st. That the contract of carriage entitled the plaintiff to admission to the cars, and gave rise to the duty on the part of the defendant to allow such admission under proper circumstances; and the refusal or neglect to perform that duty as well as the negligent performance of it furnished a ground of action in *tort*.

2nd. That in such case both the nonfeasance and the misfeasance constitute a wrongful act, for which the remedy may be either by action on the contract or in *tort*, at the option of the party injured.

3rd. That the enforcement of reasonable rules and regulations for the admission to trains in a crowded depot, where trains are constantly departing for different points and directions, is an actual necessity; and the railroad company must have power to make and require to be observed such reasonable rules and regulations.

Baltimore and Ohio Railroad Company *vs.* Carr.

4th. That such rules and regulations should not be unreasonably obstructive of the rights and convenience of the passenger; nor should they be enforced in an arbitrary and unreasonable manner to the unnecessary hindrance and delay of the passenger, or in a manner to subject him to indignity or unnecessary annoyance.

5th. That though the gate-keeper may have been mistaken as to the departure of the train in fact, or as to his duty under the rules and regulations of the depot, yet, if the circumstances were such, at the time the plaintiff presented himself at the gate, as to entitle him to admission to the train then being still in the depot and before it had started, such mistake of the gate-keeper could afford no defence to the right of the plaintiff to recover.

6th. That it was error to instruct the jury that if they found for the plaintiff for the refusal to pass him through the gate, then he was entitled to such damages as they might find would, under all the circumstances, compensate him for such refusal.

7th. That in cases of this character the jury can only give such damages as were the immediate consequences naturally resulting from the act complained of, with the right to allow exemplary damages for any malice, or the use of unnecessary force, in the commission of the wrong alleged.

8th. That the expenses incurred by the plaintiff, occasioned by the refusal of the defendant to admit him to the train, such as the expense of a ticket to travel upon another train, and hotel expenses incurred by reason of the delay, may be allowed for, and mere inconvenience may be ground for damage if it is such as is capable of being stated in a tangible form, and assessed at a money value, and so for any actual loss sustained in matters of business that can be shown to have been occasioned as the direct and necessary consequence of the wrongful act of the defendant.

APPEAL from the Circuit Court for Prince George's County.

The case is stated in the opinion of the Court.

*Exception.*—The defendant offered the three following prayers:

1. The plaintiff's ticket was evidence of the payment of his fare, and of his right to be carried according to its

terms. It did not express the whole contract ; what it does not set forth may be ascertained from the reasonable rules and regulations of the defendant, and the holder of the ticket is bound to inform himself of such regulations respecting the conduct of trains and the rights of passengers.

2. If the jury find that at the time of the alleged wrong the defendant company required its ticket agent at its station in Washington to strike a gong at the hour of departure of a train, whereupon a train then due to leave did so, and required the keeper of the gate, through which passengers had to pass to take said train, to refuse passage through said gate to all such passengers arriving after the gong had struck for the departure of said train, then such regulations were reasonable regulations which the defendant company had a right to make, and which passengers were bound to know and observe.

3. If the jury find from the evidence in this case, that under the rules of the defendant company its gate keeper could not allow a passenger to pass through the gate after the gong had struck for the departure of the train which said passenger wished to take, and that the plaintiff attempted to pass through the gate after the gong had struck, and after the gate keeper had told him that his train had gone and he could not do so, and that thereupon the gate keeper used force to prevent him from passing through said gate, then the plaintiff is not entitled to recover, although the jury may further find that had he, the plaintiff, been permitted to pass through said gate, he could have made his train before it actually left the station.

The Court (STONE, C. J., and BROOKE, A. J.,) rejected the prayers of the defendant and gave two instructions of its own, as set forth in the opinion of this Court. The defendant excepted, and the verdict and judgment being against it, appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*F. Snowden Hill*, for the appellant.

*William Stanley*, for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This is an action on the case brought by the appellee against the appellant for the wrongful refusal of admission of the former to the cars of the latter; and the action was tried upon the general issue plea of not guilty of the wrong alleged.

The declaration contains but a single count, in which it is alleged that the plaintiff purchased a ticket for a passage on the road of the defendant from the town of Rockville to the City of Washington, and return: That the plaintiff became a passenger on the defendant's road, and was transported from Rockville to the City of Washington, and that, on his return, within the time limited by his ticket, he presented himself at the gate in the depot of the defendant in Washington City in proper time to take a return train to the town of Rockville, scheduled to leave the depot at 5.31 p. m., and that he was refused by the gate keeper admission to such train. And it is then alleged that the plaintiff was entitled by virtue of his ticket to pass through the gate, for the purpose of getting on the train, to be conveyed from Washington City to Rockville; and that it "was the duty of the defendant to provide competent and polite servants and agents to attend and to have charge of the gate through which passengers were compelled to pass to get on said train of cars; yet the defendant, unmindful of its duty in this regard, refused to permit the plaintiff to pass through the said gate, to enter the cars so as to be conveyed from Washington City to the town of Rockville,

and neglected to provide competent and polite servants and agents to have charge of the gate by which passengers obtained access to the cars, but had a rude, impolite and incompetent servant in charge of said gate, who then and there refused to permit the plaintiff to pass through said gate to the said train of cars, and with force pushed back the plaintiff, and was guilty of other rude, impolite and improper treatment of the plaintiff, by reason whereof the plaintiff was prevented from attending to his business engagements in the town of Rockville, and the feelings of the plaintiff were greatly injured and outraged, and he was subjected to great vexation, indignity and disgrace, and compelled and forced to remain in the City of Washington until a late hour in the night, to wit, the hour of ten minutes past ten o'clock; and the plaintiff therefore brings suit," &c.

The proof shows that the plaintiff, with a ticket entitling him to a return passage to Rockville, presented himself at the gate in the depot at Washington City, giving admission to passengers to departing trains, and sought admission to the train that left the depot, according to published time table, at 5.31, p. m., for Rockville and other points on the Metropolitan road. The plaintiff himself testifies that he reached the gate some two or three minutes before the time for the train to start; but whether the plaintiff presented himself at the gate immediately before or immediately after the signal by gong for excluding passengers at the gate for the particular train, would seem to be left in doubt, the evidence upon this point being in conflict. The plaintiff testifies that he did not hear the gong, the signal for the train to start; but he swears that the train had not left the depot, and that he had time within which he could have reached and entered the train, if he had been allowed to pass the gate as he desired to do. The proof on the part of the defendant is, that the gong had

sounded, but the train was delayed some two or three minutes in attaching and taking out some extra cars; and that it is the duty of the gate keeper to act on the signal given by the sound of the gong, and that he knew nothing of the delay that would be caused by the taking out the extra cars. The plaintiff swears that he was not only prevented from having access to the train, but that he was rudely resisted, and was struck by the gate keeper, though he says he was not physically injured. Upon the whole evidence, the defendant offered three prayers for instruction to the jury, but all three of which were rejected by the Court; and the Court substituted its own instructions, intended to cover the whole case, in the following terms:

"If the jury find that the plaintiff had purchased a ticket from Washington to Rockville, and intended to leave on the 5.31 p. m. train, but that by the instructions given by defendant to its gate keeper, passengers were not allowed to pass through the gate after the last gong had sounded, for the departure of the train, in order to take such train, and that the last gong had sounded for the departure of the 5.31 p. m. train before the plaintiff endeavored to pass through the gate, then the plaintiff is not entitled to recover; unless the jury find that the gate keeper used unnecessary force to prevent the plaintiff from passing through the gate, and if the jury find that such unnecessary force was used, then the plaintiff is entitled to such damages as may compensate him for the injury to his person and feelings that resulted from such unnecessary force.

"2. But if the jury find that the plaintiff had arrived at the gate before the last gong had sounded, and had his ticket which was duly exhibited to the gate keeper, but was refused entrance to the train, then the plaintiff is entitled to *such damages as the jury may find would, under all the circumstances, compensate him for such refusal.*" It was under

these instructions that the verdict was found for the plaintiff. Exception was taken to the instructions given, and also to the refusal to grant the prayers offered by the defendant.

The first of the defendant's prayers would seem to be based upon the theory that this is, in substance at least, an action upon the contract of carriage of the plaintiff over the road of the defendant. But this is in form an action of tort. The contract, it is true, entitled the plaintiff to admission to the cars, and gave rise to the duty on the part of the defendant to allow such admission, under proper circumstances; but, in cases of the class to which this belongs, the refusal or neglect to perform that duty, as well as the negligent performance of it, furnishes a ground of action in tort. In such case, both the non-feasance and the mis-feasance constitute a wrongful act, for which the remedy may be either by action on the contract or in tort, at the option of the party injured. *Boorman vs. Brown*, 3 *Q. B.*, 526, and same case affirmed in *Ho. Lords*, 11 *Cl. & Fin.*, 1. The prayer, as an abstract proposition, may be correct enough, but it would likely have a tendency to mislead in a case like the present, and therefore there was no error in rejecting it.

Nor do we think there was error in rejecting the second prayer of the defendant. This prayer has reference to the power of the defendant to make, and to require them to be conformed to, reasonable rules and regulations for the admission of passengers to its trains while in the depot. That the enforcement of reasonable rules and regulations for the admission to trains in a crowded depot, where trains are constantly departing for different points and directions, is an actual necessity, does not admit of question or doubt. Such regulations are not only necessary to prevent confusion and for the preservation of order, but are necessary for the guidance and pro-

tection of the travelling public. And such being the case, the railroad company must have power to make and require to be observed such reasonable rules and regulations. But such rules and regulations must always be enforced with due regard to the rights of the passenger. In the first place, the rules and regulations must not be of a nature to be unreasonably obstructive of the rights and convenience of the passenger; nor should they be enforced in an arbitrary and unreasonable manner, to the unnecessary hinderance and delay of the passenger, or in a manner to subject him to indignity or unnecessary annoyance. And in this case, though the gate keeper may have been mistaken as to the departure of the train in fact, or as to his duty under the rules and regulations of the depot, yet, if the circumstances were such, at the time the plaintiff presented himself at the gate, as to entitle him to admission to the train then still being in the depot, and before it had started, such mistake of the gate keeper could afford no defence to the right of the plaintiff to recover. *Balto. & Ohio Railroad Co. vs. Blocher,* 27 *Md.,* 277. But, in respect to the right of the defendant to enforce rules and regulations for admission to its trains in the depot, the instructions of the Court were as favorable as the defendant could possibly ask. The defendant obtained in those instructions substantially everything that was sought by its second and third prayers, and therefore there was no error in refusing those prayers as presented by the defendant.

We think, however, there was error in the second instruction of the Court, in respect to the question of damages. The jury was instructed, that if they found for the plaintiff for the refusal to pass him through the gate, then he was entitled to such damages as they might find would, under all the circumstances, *compensate him for such refusal.* This left the whole question of damages at

large, without definition by the Court, to the discretion of the jury, and without any criterion to guide them. What *compensation* would embrace—whether for actual and necessary expenses incurred by reason of the refusal, or the mere delay, or disappointment in pleasure, or the possible loss in business transactions, however remote and indirect, or for wounded feelings—were matters thrown open to the jury, and they were allowed to speculate upon them without restraint. This is not justified by any well established rules of law. In the case of *Knight vs. Egerton,* 7 *Exch.*, 407, where, in effect, such an instruction was given, the Court of Exchequer held it to be wholly insufficient; "and that it was the duty of the Judge to inform the jury what was the *true measure* of damages on the issue, whether the point was taken or not;" and the Court directed a new trial because of the *indefinite* instruction as to the true measure of damages.

The rule by which damages are to be estimated is, as a general principle, a question of law to be decided by the Court; that is to say, the Court must decide, and instruct the jury, in respect to what elements, and within what limits, damages may be estimated in the particular action. *Harker, et al. vs. Dement,* 9 *Gill,* 7; *Hadley vs. Baxendale,* 9 *Exch.*, 341, 354. The simple question whether damages *have been* sustained by the breach of duty or the violation of right, and the *extent* of damages sustained as the *direct consequences* of such breach of duty or violation of right, are matters within the province of the jury. But beyond this juries, as a general rule, are not allowed to intrude, as by such intrusion all certainty and fixedness of legal rule would be overthrown and destroyed. In a case like the present the rule for measuring the damages is fixed and determinate, and should be applied in all cases alike, except in those cases where there may be malice or circumstances of aggravation in the wrong complained of, for which the damages may be enhanced.

Indeed, it is of the utmost importance that juries should be explicitly instructed as to the rules by which they are to be governed in estimating damages; for, as it was justly observed by the Court in *Hadley vs. Baxendale, supra,* "if the jury are left without *definite* rule to guide them, it will, in most cases, manifestly lead to the greatest injustice." In cases of this character, the jury can only give such damages as were the immediate consequences naturally resulting from the act complained of, with the right to allow exemplary damages for any malice, or the use of any unnecessary force, in the commission of the wrong alleged. *B. & O. R. R. Co. vs. Blocher, supra.* The expenses incurred by the plaintiff, occasioned by the refusal of the defendant to admit him to the train, such as the expense of a ticket to travel upon another train, and hotel expenses, incurred by reason of the delay, may be allowed for ; and mere inconvenience may be ground for damage, if it is such as is capable of being stated in a *tangible form,* and assessed *at a money value;* and so for any *actual loss* sustained in matter of business, that can be shown to have been occasioned as the *direct and necessary consequence* of the wrongful act of the defendant, made the ground of action. *Denton vs. G. N. Railway Co.,* 5 *El. & B.,* 860; *Hamlin vs. Great Northern Railway Co.,* 1 *H. & N.,* 408; *Hobbs vs. London & South-Western Railway Co., L. R.,* 10 *Q. B.,* 111; *Mayne on Damages, by Wood,* 398, 399; 2 *Greenl. Ev.,* sec. 254.

For the error in the second instruction of the Court with respect to the measure of damages, the judgment of the Court below must be reversed, and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 11th June, 1889.)