CHARLES MARSHALL, WILLIAM A. FISHER, CHARLES
H. UTTERBACK, and others *vs.* EDWARD K. COOPER.
SAME *vs.* SAME.

*Equitable Set-off—An Attorney has no Lien on a Judgment
recovered for his Client, for Professional services rendered in the
Suit—Insolvency an Equitable ground of Set-off.*

A judgment for $6000, was recovered in an action of *tort* by U. against C. in
the Superior Court of Baltimore City in 1871, and was affirmed by the
Court of Appeals in 1873. Prior to the institution of that suit, namely: in
1866, U. became indebted to C. in the sum of $11,000, for which, with
interest thereon, C. held the promissory notes of U. secured by a deed of trust
to R. conveying certain lands in Virginia. In 1868, C. instituted proceed-
ings in equity in Virginia to enforce his claim against the property con-
veyed by the deed of trust. This claim was resisted by U. upon the alleged
ground of fraud and usury, and by other defendants in the cause, who
claimed to hold liens upon one of the parcels of land described in the deed
of trust, prior and superior to the lien of C., but the Court in 1871, passed
a decree in favor of C. not only against U. but also against the other defen-
dants in the suit, and adjudged that C. was entitled to a priority of lien as
against the property. From that decree the parties defendants took an
appéal to the Court of Appeals of Virginia. U. being indebted to his
attorneys M. and F. for professional services rendered by them in the afore-
mentioned action of *tort*, he having contracted at the time of retaining
them to prosecute the suit, to pay them one-third of the amount which
might be recovered, assigned the judgment therein recovered, to them, to
the extent of $2000, being the one-third thereof. U. being indebted to other
persons, the said judgment was entered to their use to the extent of their
respective claims; these latter uses being entered subject to the previous
entry to the use of M. and F. Upon failure by C. to pay to M. and F. upon
their demand, the sum of $2000 with the costs adjudged by the Court of
Appeals of Maryland, they caused a *fieri facias* to be issued out of said
Court in the name of U. against C. who thereupon filed his bill to restrain
by injunction the enforcement of the judgment against him, until the
determination of the proceedings pending in the Court in Virginia, and

until the mutual claims and demands of the complainant and U. should be adjusted by proper accounts to be taken between them under the direction of the Court. The relief sought by the complainant was ·asked on the ground of an equitable set-off, the bill charging that he was precluded by the ordinary rules of law from setting up his claim against U, in the action of *tort*, in which the judgment was recovered. U. the judgment creditor was utterly insolvent. HELD :

1st. That the complainant was entitled to the equitable right of set-off, not only as against U. but also as against the parties to whose use the judgment was entered ; and consequently entitled to be protected by injunction against the enforcement of the judgment.

2nd. That, as against the equitable right of set-off, claimed by the complainant, M. and F. were not entitled to any lien upon the judgment, growing out of their contract with U. or for professional services rendered by them as attorneys in the suit.

The insolvency of a party seeking to enforce his judgment, furnishes a sufficient ground for the interposition of a Court of equity to enable the debtor to avail himself of a set-off.

APPEALS from the Circuit Court of Baltimore City.

The first appeal in this case was taken from the order of the Court below, continuing the injunction previously granted, until the further order of the Court ; and the second was taken from the order of the said Court dismissing the cross-bill of the defendants, Charles Marshall and William A. Fisher, it having been agreed that their answer to the complainant's bill should have the effect of, and be taken as, a cross-bill. The case is stated in the opinion of this Court.

The cause was argued before BARTOL, C. J., BRENT, GRASON and MILLER, J.

*John Scott, Jr.*, for the appellants.

It is settled that there can be no set-off, if the *debt be subject to any contingency*, and the debt claimed to be due to the complainant is certainly of that character. See

*Chance vs. Isaacs*, 5 *Paige*, *N. Y.*, 595; *Myers vs. Davis*, 22 *N. Y.*, 489; *Bradley vs. Angel*, 3 *Comstock*, *N. Y.*, 477 and 478.; *Mohawk Bank vs. Burrows*, 6 *Johns Ch.*, 322; *Keep vs. Lord*, 2 *Duer*, (*N. Y.*) 81, &c.; *Ex parte Hale*, 3 *Vesey*, 304; *Dade vs. Irwin*, 2 *Howard*, 383, 390.

The complainant is not able to make out his right of equitable set-off. The doctrine of equitable set-off is outside of, and independent of the statute. Some of the precedents from our sister States may justify its extension to the unpaid *balance* of the complainant's claim under the circumstances of this case, but the clear weight of authority is the other way; and by Judge ORMOND, of Alabama, the mistake was said to have come from their inadvertently copying decisions made under the English statutes of Bankruptcy.

The right of set-off ordinarily is not a common law right, due *ex debito justitiæ*, but a statutory innovation. The language of the statute is the limit of the right, and where a particular claim is not embraced in its provisions, the Court has no power to extend the application. This case, it must be granted, does not fall within the purview of our Act, and the complainant has to resort to the ancient equitable rule on the subject. That rule which is solely of equitable origin, was of course framed on some requirement of equity, in order to enforce a right or to prevent a failure of justice. The principle which underlies the cases, is that when two persons are mutually indebted, and he who claims the set-off trusted as a means of paying himself to the debt which he owed, in such a case he has a claim to that particular fund in preference to his debtor, and perhaps to all the world. There must be what the books call not only *mutual debts* but also *mutual credits*, which is very different from the *mutual credit* of the Bankrupt Act, which was the first English statute of set-off.

The ground of jurisdiction is the contract, express or implied, which gave the party an equitable property in the debt which he owed. He bargained for this before he would allow his creditor to run in his debt, and permitted the obligation to be incurred only on its faith and credit. He was necessarily, in a very different position from one who had trusted solely to the personal credit of the debtor, and this difference of position gave him a right superior to any other, in the event that this fund was the only means of saving himself from loss. The insolvency of the party against whom the debt is to be set-off, was a necessary condition; for otherwise, the legal remedy was ample, without a resort to the security he had bargained for, but it is error to assert that insolvency *alone* is sufficient. It is just as necessary that the debt which is claimed to be subject to the set-off was contracted because the creditor himself owed one to which he understood he could resort. See *Timms vs. Shannon,* 19 *Md.,* 310, 317 ; *Rawson vs. Samuel,* 1 *Craig & Phil.,* 172, 175 ; *Ex parte Prescott,* 1 *Atkyns,* 231 ; *Gordon vs. Lewis,* 2 *Sumner,* 633 and 634 ; *Howe vs. Sheppard,* 2 *Sumner,* 414 ; *Greene vs. Darling,* 5 *Mason,* 207, &c. ; *Riddick vs. Moore,* 65 *N. C.,* 387 ; *Tuscumbia vs. R. R. Co. vs. Rhodes,* 8 *Alabama,* 229 ; *Freeman vs. Lomas,* 5 *Eng. Law and Eq.,* 120 ; *Dade vs. Irwin,* 2 *Howard,* 383, 390 ; 2 *Story's Eq. Jur.,* section 1436, *and notes.*

The refusal to allow to Marshall and Fisher, their costs already incurred by them in the Court of Appeals, was an error. They were the equitable assignees of the judgment to the extent of one-third of its amount, and when the case was taken up by appeal, the entry to their use made them responsible for all the costs, amounting in this instance to a large sum. Those costs they have incurred, and are now responsible for ; and as a consequence of their success they obtained upon the affirmance of the decision of the Superior Court, a judgment against the complain-

ant to indemnify them for the outlay. They have also an attorney's fee for ten dollars taxed in this Court, and it would be outrageous to make them lose, as this injunction does, not only their taxed fee, but also the costs, for which they have to answer to the clerk, out of their own pocket. The set-off certainly does not prevail against the costs adjudged against the complainant for wrongfully prosecuting his appeal, and which the appellee recovers solely as an indemnity for the outlay it has entailed on him.

Whatever may have been the old law on the subject of attorney's fees, they are now the subject of contract and action, not only in Maryland, but throughout the United States. If they are the subject of contract, they may be secured like any other debt, and the security, enforced by the ordinary process of the Court. Marshall and Fisher, before performing any service, contracted for the amount of their fee, and also for its security, expressly stipulating that they were to have one-third of what was recovered in the action. On the faith of that agreement, and relying entirely on its efficacy, they expended much time and labor; and certainly they ought not to be deprived of the fruit of their labor. It must be admitted that Marshall and Fisher could contract for a lien, and that Utterback could enter into a binding contract for such lien.

But this view of the case proceeds on the assumption that there is no *attorney's lien*, as such, and is founded entirely on principles of equity, which are common to all contracts. The weight of authority, however, is clearly in favor of the validity of the lien, and this conclusion is supported by the overwhelming preponderance of reason. In the case from Illinois, so confidently cited by the other side, the Judge says that the conflict of precedent is such as to make the matter *res nova,* and he then proceeds to give his reasons in opposition to the doctrine. According to his statement, the lien is denied in Vermont, New Hampshire, Pennsylvania, Indiana and Missouri; while

in New York, Alabama, Georgia and Florida, it is favored and sustained. To these last may be added the Court of Appeals of Arkansas, the High Court of Chancery in England, and the Supreme Court of the United States.

The Supreme Court state it to be the prevailing rule of this country. Lord ELDON expressed surprise at a contrary doctrine, and said the lien was supported by principles of natural justice. The arguments in its favor moreover, has been so strong as to reform the practice of the English Court of Common Pleas, and to beat down all discordant precedents in New York, in which State as in England, the lien now prevails in its fullest vigor.

Some misapprehensions may arise as to those cases in which the Courts say that the claim of set-off is preferable to the lien of the attorney. On examination they will be founded to rest on the principle, that *statute law must be obeyed*, whether it works injustice or not; and that the Court has no option but to enforce the rule it prescribes. In some of the States, as New York and Texas, the statute allowed one judgment to be set-off against the other; and when the solicitor's lien was claimed the statute was ruled to be paramount. In others, it was held, that the legal right of set-off would be enforced in equity, because the case was one of legal nature, and a uniformity of practice was desirable. This case comes under none of those heads, since the set-off is not provided for by our statute, and the complainant's right is of purely equitable cognizance. *In re, Paschal,* 10 *Wallace,* 493, *&c.; Rooney vs. Second Avenue R. R.,* 18 *N. Y.,* 368; *Ward vs. Syme,* 9 *Howard's Prac. Rep.,* (*N. Y.,*) 25; *Hall vs. Ody,* 2 *Bos. & Pul.,* 28; *Read vs. Dupper,* 6 *Term,* 362; *Mitchell vs. Oldfield,* 4 *Term,* 123; *Gridley vs. Garrison,* 4 *Paige, N. Y.,* 653; *Dunkin vs. Vandenberg,* 1 *Paige,* 625, *&c ; Sexton vs. Pike,* 13 *Arkansas,* 194, *&c. ; Ex parte Plitt,* 2 *Wallace, Jr., C. C.,* 479, *&c.; In re Fiddey, a solicitor,* 7 *Chan. Appeal Cases,* 776, *&c.;*

*The Jeff. Davis,* 2 *Adm. and Eccl.,* 2; *The Heinrich,* 3 *Adm. and Eccl.,* 510.

*L. L. Conrad* and *S. Teackle Wallis,* for the appellee.

Has Equity jurisdiction to enforce Cooper's set-off, as against Utterback? Of this we think there can be no doubt. Its jurisdiction in this respect is independent of statute, resting on immemorial exercise of power. It is applied whenever a case of natural Equity arises, not within the scope of statute law. Established grounds for its exercise are mutual and connected debts between parties, and insolvency of the party against whom the set-off is claimed. Either of these grounds is sufficient. Both exist here. The hopeless insolvency of Utterback is expressly charged, and is admitted. Nowhere is the general jurisdiction of equity in this regard more fully asserted than in Maryland. The Maryland statute gives a legal right of set-off in cross-demands, such as subsist between the parties here. Where such legal right exists, but the demand due the party claiming the set-off is so situated (and the insolvency of the other party is held to be such a situation,) that he cannot obtain relief at law, equity will compel a set-off. *Waterman on Set-off, secs.* 14, 344-5, 395-6-7; *Kerr on Injunctions,* 68; *Bispham's Pr. of Eq.,* 35; *Md. Code, Art.* 75, *sec.* 12; *Merrill vs. Souther,* 6 *Dana,* 305; *Jacoby vs. Guier,* 6 *Sergt. & Rawle,* 448; *Gay vs. Gay,* 10 *Paige,* 376; *Lindsay vs. Jackson,* 2 *Paige,* 581-2; *Brazleton vs. Brooks,* 2 *Head,* (*Tenn.,*) 194; *Colyer's Adm'r vs. Craig,* 11 *B. Monroe,* 73; *Smith vs. Donnell,* 9 *Gill,* 89; *Scott vs. Scott,* 17 *Md.,* 91.

Cooper's right of set-off against Utterback being unquestionable, the next inquiry is, whether the other defendants have any prior equities which supersede the operation of such set-off as to them. The strongest opposing claim is that of Marshall and Fisher. They claim $2,000

as counsel fees, earned in the suit which resulted in the verdict against Cooper of $6,000 damages. They assert that this fee was secured to them by a contract, under which they were to receive one-third of whatever amount should be recovered against Cooper ; and to receive also a lien therefor on the judgment ; that pursuant to said contract they entered the judgment to their use on the 14th November, 1871—the day the verdict was rendered. They claim, therefore, in a double right, viz : in virtue of their contract, and of their attorneys' lien. In regard to the first it is sufficient to say that no such contract was proven or admitted, and even if proved or admitted, Cooper was neither party nor privy to it, and is unaffected by it.

As to the second—their attorneys' lien : Originally, in England, in some Courts, a solicitor had no lien, of any sort, on a judgment even as against his client. In other Courts his lien was admitted and protected to the extent of the *costs* allowed by law, which were considered to belong to the solicitor. At a later period, to avoid conflict, and to establish a uniform practice, the twelve judges adopted a rule recognizing the solicitor's lien in all Courts to the extent of *costs*, but no further. No English case can be found which goes beyond this, even between solicitor and client.

In this country decisions have varied. A great preponderance of authority, however, coincides with the English rule,

In Vermont, New Hampshire, Illinois, Indiana, Pennsylvania, Missouri, Minnesota, California and Texas, by the adjudications of their highest Courts, the attorney's lien on judgments is limited to disbursements, and to *costs*, and such *fees* as are *taxed by law.* As to costs and fees, not so taxable, but the right to which lies in express contract, or in implied contract, as on *quantum meruit,* no lien attaches, and the attorney must pursue his rights by appropriate action, like any other claimant on contract.

In Maryland the only case which touches the question approves this doctrine. *Strike's Case,* 1 *Bland,* 98.

The Courts of New York, appear to have enlarged the lien to an unprecedented, and we can but think, a dangerous extent. They admit it even for contingent fees. This would seem to be straining this, so to speak, prerogative right of attorneys to its utmost. But not even in those Courts, far less elsewhere, can any case be found wherein the attorney's lien for fees is enforced against a legal or equitable right of set-off in the defendant. The appellants have not produced such a case. It is certainly incumbent on them to do so, for that is the precise issue they are required to sustain. We have cited many cases expressly holding the contrary *Strike's Case,* 1 *Bland,* 98 ; *Forsythe vs. Beveridge,* 52 *Ills.,* 268 ; *Wells vs. Hatch,* 43 *N. H.,* 247 ; *Hill vs. Brinkley,* 10 *Ind.,* 102 ; *Frissell vs. Haile,* 18 *Mo.,* 18 ; *Wright vs. Treadwell,* 14 *Texas,* 255 ; *Ex parte Kyle,* 1 *Cal.,* 331 ; *Jacoby vs. Guier,* 6 *Sergt. & Rawle,* 451 ; *Hayden vs. McDermott,* 9 *Abbott's Pr. R.,* 14 ; *Martin vs. Kanouse, et al.,* 17 *Howard Pr. R.,* 146 ; *Nicoll vs. Nicoll,* 16 *Wend.,* 446 ; *Dubois's Appeal,* 38 *Penn. St.,* 235.

Assuming the lien claimed by Marshall and Fisher to have ever existed, they have long ago lost it. By the entry to their use, November 14th, 1871, they became assignees *pro tanto,* and extinguished their lien.

An entry to the use of, is an assignment. An assignee is an owner. Lien is an adverse right, and cannot co-exist with ownership. The two are inconsistent. The union of title and charge destroys the charge. This general rule is applicable to all cases where the minor right is merged in ownership. When Marshall and Fisher became assignees they ceased *ipso facto* to be lienors. 3 *Parsons on Contracts,* 245-6-8 ; *Dodd vs. Brott,* 1 *Minn.,* 270 ; *Glenn vs. Spry,* 5 *Md.,* 110 ; *Mitchell vs. Mitchell,* 2 *Gill,* 231.

Their position was not merely that of assignees ; they were assignees with notice, and accordingly were subject

to all the equities to which their assignor was liable. *Kerr on Injunctions*, 68; *Waterman on Set-off*, secs. 83, 96; *Dood vs. Brott*, 1 *Minn.*, 270; *Central Bank vs. Copeland*, 18 *Md.*, 317; *Timms and Wife vs. Shannon*, 19 *Md.*, 314; *Gay vs. Gay*, 10 *Paige*, 377; *Merrill vs. Souther*, 6 *Dana*, 305.

The claims of Brooke, and Scott and Sanders, as against Cooper, need hardly be treated seriously. They were ordinary creditors of Utterback. Their sole right in the Utterback judgment is derived from the assignments thereof, which they took in February, 1873. The evidence shows them to have been familiar with the litigation between Cooper and Utterback in Virginia. Indeed Sanders was a party to it, and Brooke and Scott were Utterback's counsel, and their claim is for services rendered in that very litigation. They were assignees under assignments taken long after Cooper's claims were known to them. The authorities already cited, as to assignees with notice, effectually dispose of their pretensions.

BARTOL, C. J., delivered the opinion of the Court.

The object of the bill of complaint in this case, filed by the appellee, is to restrain by injunction, the enforcement of a judgment at law against him, until the determination of certain proceedings pending in the Court of Appeals of Virginia, and until the mutual claims and demands of the complainant and the judgment creditor shall be adjusted by proper accounts to be taken between them, under the direction of the Court. The appellee asks relief on the ground of an equitable set-off.

The judgment for $6000 was recovered in an action of *tort*, by Charles H. Utterback against the appellee, in the Superior Court of Baltimore City, in November, 1871, and was affirmed by the Court of Appeals in January, 1873. (37 *Md.*, 282.) Long before the institution of that suit,

viz : in July, 1866, Utterback became indebted to the appellee, in the sum of $11,000, for which, with interest thereon, the appellee held the promissory notes of Utterback, secured by a deed of trust from the debtor, to R. W. L. Rasin, conveying certain lands in Fauquier County, Virginia. In February, 1868, the appellee instituted proceedings in the Circuit Court of Fauquier County, Virginia, sitting as a Court of Equity, for the purpose of enforcing his claim against the property conveyed by the deed of trust. In that case, the claim of the appellee was resisted by Utterback, upon the alleged ground that it was fraudulent and usurious, and by other defendants in that cause, who claimed to hold liens upon one of the parcels of land described in the deed of trust, prior and superior to the lien of the appellee. It appears from the proceedings in that case, which are exhibited with the bill, and by agreement are made evidence, that issues were framed and sent by the Court to a jury, to try the questions of the alleged fraud and usury on the part of the appellee ; and the jury by their verdict found upon the issues, in favor of the claim of the appellee as legal and valid ; and it further appears that the Court in September, 1871, passed a decree in favor of the appellee, not only against Utterback, but also against the other defendants in that suit, and adjudged that the appellee was entitled to a priority of lien as against the property. From that decree, the parties defendants in the suit, have taken an appeal to the Court of Appeals of Virginia, which appeal is still pending and undecided.

The bill in this case, charges that "even if the decree of the Circuit Court of Fauquier County shall be affirmed, the amount which your orator will be able, at the best, to realize thereunder from the premises there in controversy, will fall far short of your orator's said debt and interest, and the said Utterback will remain indebted to your orator in a large sum of money, if not to the full

amount of the judgment which he has recovered against your orator in this State. If the said decree should be reversed, the said Utterback will be indebted to your orator in the full amount of your orator's debt of $11,000, and interest," &c., &c.

The bill further charges, that "Utterback is wholly and hopelessly insolvent, having been so at the time he became indebted to your orator aforesaid, and continues so down to the present moment."

And the bill further alleges, as ground for equitable relief, " That having been precluded by the ordinary rules of law from setting up his claim as aforesaid against said Utterback in the action of *tort*, in which said judgment was recovered against him, he has no means of defending himself against the gross and manifest injustice, which would result to him from the execution of said writ of *fieri facias*, except by seeking the interposition of this honorable Court, and he humbly submits that in view of the circumstances aforegoing, and the insolvency of said Utterback, he is entitled to be protected by injunction, forbidding and restraining the same, until the final determination of the appeal now pending as aforesaid in the Court of Appeals of Virginia, and your orator tenders himself ready and willing when said appeal shall be determined, or the amount of said Utterback's liability to him finally ascertained, to pay over as your honor may determine, any part of the judgment aforesaid, which may remain due by him, after first deducting what may be otherwise left unsatisfied of his claim against said Utterback."

It appears by the record, and the agreement of facts signed by the solicitors, that Utterback was indebted to his attorneys, Marshall and Fisher, (the appellants,) for professional services rendered by them in the suit against the appellee, to the amount of *one-third* of the judgment therein recovered, as of the date of the entry to their use, (viz : in November, 1871,) he having contracted at

the time of retaining them to prosecute the suits, to pay them *one-third* of the amount which might be recovered in the same.   That he was also indebted to the appellants, Brook and Scott and Sanders, the amounts respectively mentioned in the assignments to their use respectively. That they had issued attachments upon their respective claims, in order to reach the proceeds of the judgment, in the hands of the appellee, who was made garnishee in December, 1871, and pleaded *non assumpsit* and *nulla bona* thereto ; that these attachments were pending until February, 1873, when they were dismissed upon the agreement of Utterback, to assign to them the judgment, in the manner shown by the copy of the judgment exhibited with the bill ; that the amounts due to them remain wholly due and unpaid, and the assignment to them was intended to enable them to secure satisfaction thereof out of the proceeds of the judgment.

It further appears that the appellee received from the proceeds of the sale of one of the parcels of land mentioned in the deed of trust, $2100.34, May, 1868, and applied the same on account of Utterback's debt to him—which sum is not involved in the appeal.   That the appellee also received from the rental of the farm now in controversy the aggregate sum of $1763.77—paid to him by the receiver, under the orders of the Circuit Court of Fauquier County.   And that the last mentioned farm was sold, under order of the same Court and was bought by the appellee, and that the proceeds of sale, after deducting costs and expenses amounted to $7335.65, which was allowed to and received by the appellee on account of his claim,—and that he has since re-sold the farm.

The questions to be decided are, first, whether the appellee is entitled to the equitable right of set-off claimed by him, and to what extent? and secondly, whether such right can be maintained, as against the parties appellants, to whose use the judgment has been entered?

In deciding the first question, it is material to ascertain to what extent the appellee's claim has been paid and satisfied; and this depends upon the effect of the proceedings in Virginia.

The appellants contend that all the money received by him, including the net proceeds of the farm purchased by him; and amounting in the aggregate to $11,199.76, is to be applied in the reduction of his claim as payment thereon; and that the balance only can be claimed as a set-off, which the appellants state to be only about $2700; and they contend that it is inequitable, even if the right of equitable set-off exists, to make the injunction embrace the whole judgment, and restrain the appellants from collecting any part of it.

We do not concur in this view; with the exception of the sum of $2100.34 before mentioned, which it is conceded was received absolutely and applied in the reduction of the debt; we do not think the moneys which came into the appellee's hands, under the Court's orders, from the rental and sale of the land in dispute, can be considered as absolute or final payments upon his claim.

The orders and decree under which they were received, are not final; but still open and subject to be reversed on appeal, and the money is held by the appellee not in his absolute right; but as a mere stakeholder, subject to the final decision of the cause, to be applied in the satisfaction of his debt, only in the event of an affirmance of the decree of the Circuit Court, and in case the same is reversed, will belong to others, and his debt will remain unsatisfied, except to the extent of the credit first mentioned. Under these circumstances, it cannot be said that the appellee has not a subsisting claim, which a Court of Equity will recognize, to an amount exceeding the amount of the judgment. There is no question as to the insolvency of Utterback, the judgment creditor. This fully appears from the record, and as against him, there can be no doubt of the equitable

right of set-off claimed by the appellee. Besides the other equitable grounds stated in the bill, arising from the nature of the appellee's cross claim, and his inability to assert the same as a set-off at law, in the action of *tort* against him ;—the insolvency of Utterback furnishes equitable ground for the interference of the Court.

In *Waterman on Set-off*, sec. 396, the author says, "it is deducible from the general scope of the authorities, that insolvency has long been recognized as a distinct equitable ground of set-off," and cites many authorities. This was distinctly decided in *Lindsay vs. Jackson*, 2 *Paige*, 581— a case which has been cited and approved by this Court in 9 *Gill*, 89, and 17 *Md.*, 91. We refer also in support of this proposition to *Gay vs. Gay*, 10 *Paige*, 376 ; *Merrill vs. Souther*, 6 *Dana*, 305 ; *Pond vs. Smith*, 4 *Conn.*, 297 ; *Robbins vs. Holley*, 1 *Monroe*, 91 ; and *Tuscumbia R. R. Co. vs. Rhodes*, 8 *Alabama*, 206. In this last case the doctrine governing Courts of Equity on this subject is fully and ably discussed in the opinion of Judge GOLDTHWAITE. From these authorities, and others might be cited to the same effect, it is clear that the appellee, as against Utterback, would be entitled to be protected by injunction against the enforcement of the judgment.

The authorities cited by the appellants, to show that the equitable right of set-off does not exist, where the cross claim is a mere contingent one, depending for its existence upon some contingency to happen in the future, have no application to this case ; because as we have before stated, the claim of the appellee is not one of this character ; but a present subsisting debt to the extent we have before indicated.

It remains for us to consider whether the appellee is entitled to relief as against the appellants, the assignees of the judgment.

As respects Brook and Scott and Sanders, who claim simply as assignees, it is quite clear that they stand in no

better position than the judgment creditor, and are subject to the same equitable rights which existed against Utterback.   This is abundantly shown by the cases of *Gay vs. Gay* and *Merrill vs. Souther*, before cited, and by *Central Bank vs. Copeland*, 18 *Md.*, 305 ; and *Timms vs. Shannon*, 19 *Md.*, 277.   We refer also to *Jacoby vs. Guier*, 6 *Ser. & R.*, 45 ; *Kerr on Injunctions*, 68 ; and to *Waterman on Set-off*, secs. 83, 96, and cases there cited.

This principle applies also to the appellants, Marshall and Fisher, so far as they claim as mere assignees.   They assert, however, a right to a superior equity, on the ground of a lien to which they claim to be entitled as attorneys for Utterback, in the suit in which the judgment was recovered.

By reference to the English cases, it appears that formerly the rule on this subject was not uniform ; in some of the Courts the solicitor had no lien whatsoever, while in others his lien existed to the extent of the *costs* allowed by law, which belonged to the solicitor ; afterwards the judges established a uniform practice or rule, under which the lien was recognized to the extent of his legal costs or fees allowed to him by law.   There is no English case which we have seen that extends the lien farther than this.

In the United States the decisions are not uniform.

In Vermont, New Hampshire, Pennsylvania, Indiana, Illinois, Missouri, Minnesota, Texas and California, it has been decided by the Courts of last resort, that no such lien exists, except for the attorney's costs and fees taxed and allowed by law.   And for a claim of the attorney for services, such as that of the appellants ; he is left to his remedy against his client upon the contract.   While in some of the States as in New York, Alabama, Georgia and Florida, and perhaps some others, the attorney's lien is held to extend to his compensation for services, where it is fixed by contract, or rests upon the principle of *quantum*

*meruit;* and as between the attorney and client, the Courts protect the lien of the attorney. *In re, Paschal,* 10 *Wall.,* 483, the Supreme Court have also recognized such lien as existing. That was a case arising between the attorney and his client, and the questions there decided have no application to this case.

In New York, where the lien is recognized to the fullest extent, it has been decided by the Court of Errors, that it cannot be asserted against a party proceeding by a bill in chancery, to obtain a set-off against the judgment of a cross claim existing when the judgment was rendered. *Nicoll vs. Nicoll,* 16 *Wend.,* 446. In that case the decision of the Chancellor in *Gridley vs. Garrison,* 4 *Paige,* 647, was reversed.

In Maryland, no case involving the question of the attorney's lien has arisen or been decided by the Appellate Court.

In *Strikes' Case,* 1 *Bland,* 98, a petition was filed by solicitors, claiming to be allowed out of a fund in Court, for professional services rendered in the cause ; the Chancellor dismissed the petition saying, that "he knew of no practice of this Court, or of any analogous proceeding of the English Court, which would authorize the introduction of claims of this sort into a cause depending, or about to be disposed of," and added, "the Chancellor must in all cases leave the contracts between solicitors and suitors, relative to professional services, to be settled and decided upon, in like manner as all other contracts." And this we think is in accordance with sound reason, and the uniform practice in this State. In our opinion the appellants, Messrs. Marshall and Fisher, were not entitled to any lien upon the judgment, growing out of their contract with Utterback, or for professional services rendered by them as attorneys in the suit, which they can assert in this case, as against the equitable set-off claimed by the appellee. Their rights depend upon the entry made to their use, and

they stand in the position of assignees of the judgment, which as we have before said, is subject to the equitable right of set-off claimed by the appellee.

There was no error in the ruling of the Circuit Court upon the petition of the appellants, asking that the appellee be required to elect between the proceedings in this cause, and that instituted by him in the Circuit Court of Fauquier County, against the same parties. It is settled that the pendency of a suit at law in a foreign jurisdiction is no bar to a suit for the same cause in this State. *Seevers vs. Clement*, 28 *Md.*, 434.

In this case it appears that the Maryland defendants, Marshall and Fisher, did not appear in the Virginia suit, refusing to acknowledge the jurisdiction of the Virginia Court. While the other appellees, residents of Virginia, have voluntarily appeared in the present suit. We think there is no equitable ground upon which the appellee could be required to make the election.

Upon the whole case, we are of opinion the appellee was entitled to the injunction as prayed, and the order of the Circuit Court will therefore be affirmed, and the cause remanded, to the end that the injunction may be issued upon the terms prescribed by the order of the Circuit Court.

*Affirmed and remanded.*

(Decided 22nd June, 1875.)