YORTON VS. THE MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY.

62 367
79 229,
62 367
105 357

*November 11, 1884 — March 3, 1885.*

*(1) Railroads: Stop-over tickets: Negligence of conductor: Damages.
(2) Costs in supreme court: Offset: Lien of attorneys.*

1. A passenger who, through the negligence of one conductor, is not furnished with a stop-over ticket to which he is entitled, and who, on attempting to resume his journey after a stop, is required by a second conductor to pay additional fare or leave the train, may elect to leave the train, and in that case may recover from the railway company not merely the amount of the additional fare which he is subsequently obliged to pay in order to reach his destination, but all damages sustained by him as the direct and natural consequence of the fault of the first conductor.

2. A judgment for costs in favor of a plaintiff on a second appeal may be set off or applied on a similar judgment in favor of the defendant on a former appeal, although there has been an assignment of the judgment by the plaintiff to his attorneys to secure them for their disbursements and advances in the case.

APPEAL from the County Court of *Milwaukee* County. The cause was before this court on a former appeal and is reported in 54 Wis. 234. Upon the second trial the complaint was amended to conform to the view of the case taken by this court. The jury found a special verdict substantially as follows: The plaintiff, after he purchased his ticket for Oshkosh and entered defendant's train at Marion on the evening of October 27, 1880, and when he delivered such ticket to Conductor Sherman of said train, asked said conductor to give him a stop-over check for Clintonville; and said conductor understood such request, but gave to the plaintiff a trip check as and for such stop-over check. The plaintiff received the trip check believing it to be a stop-over check, and made no attempt to read the same before leaving the train at Clintonville, and did not know the contents of the check when he got upon the second train at Clintonville. Under the rules and regulations of the defend-

ant company the trip check did not authorize the plaintiff to leave the train at Clintonville and resume his passage to Oshkosh upon another train. The plaintiff was not notified by the conductor of the second train, Conductor Bartlett, before that train started from Clintonville, that the trip check given by Conductor Sherman was not good for passage on that train and that he must either pay his fare to Oshkosh or leave the train, but he was so notified by Conductor Bartlett after leaving Clintonville and before reaching Bear Creek station. The plaintiff then informed Conductor Bartlett of the circumstances under which he procured the check from Conductor Sherman and that he had paid his fare from Marion to Oshkosh. Conductor Bartlett then offered that, if the plaintiff would pay his fare to Oshkosh, upon the arrival of the train there he would go with the plaintiff to Conductor Sherman's house, which was only a short distance from the depot, and if Conductor Sherman said that the plaintiff was entitled to ride to Oshkosh, he, Bartlett, would refund the money; and told the plaintiff that he would have plenty of time to do so and then take his train on the Northwestern road. After the train reached Bear Creek station, and while it was standing there, Conductor Bartlett again requested the plaintiff to pay his fare, stating the amount, and upon his refusing to do so told him him he must get off the train. The plaintiff refused to pay any fare to Conductor Bartlett, claiming the right to ride on the check given him by Conductor Sherman, and refused to leave the train voluntarily, but did leave the train at Bear Creek station upon the order of Conductor Bartlett. Bear Creek station was a usual stopping place for defendant's trains. By reason of being left upon the platform at that station the plaintiff became sick and indisposed. To have entitled him to passage on Conductor Bartlett's train from Clintonville to Oshkosh, the plaintiff would have had to pay $1.85. He had sufficient money with him.

Yorton vs. The Milwaukee, Lake Shore & Western R'y Co.

The court instructed the jury that the plaintiff was rightfully put off the train, and that the only damages shown were what he was compelled to pay and did pay to the company afterwards for his ride from Clintonville to Oshkosh, with interest from the time of payment. The jury assessed the damages accordingly, and from the judgment entered upon the verdict in his favor the plaintiff appealed.

For the appellant there was a brief by *E. P. Smith, Nath. Pereles & Sons*, and oral argument by *Mr. Smith*.

*Alfred L. Cary*, for the respondent, cited 1 Sutherland on Dam., 148, 164–6, and note (*a*); *Bradley v. Denton*, 3 Wis. 557, 569; *Miller v. Mariner's Church*, 7 Me. 51; *Hamilton v. McPherson*, 28 N. Y. 72; *Rexter v. Starin*, 73 id. 601; *Loker v. Damon*, 17 Pick. 284, 288; *French v. Vining*, 102 Mass. 132; *Indianapolis, B. & W. R'y Co. v. Birney*, 71 Ill. 391; *Gordon v. Brewster*, 7 Wis. 355; *Dillon v. Anderson*, 43 N. Y. 231; *Costigan v. M. & H. R. R. Co.* 2 Denio, 609; *Dorwin v. Potter*, 5 id. 306; *Heckscher v. McCrea*, 24 Wend. 304, 309; *Taylor v. Read*, 4 Paige, 561, 572; *Simpson v. Keokuk*, 34 Iowa, 568; *Davis v. Fish*, 1 G. Greene, 407; *Allender v. C., R. I. & P. R. R. Co.* 37 Iowa, 264, 269; *Dobbins v. Duquid*, 65 Ill. 464; *Chamberlin v. Morgan*, 68 Pa. St. 168; *New Orleans, J. & G. N. R. R. Co. v. Echols*, 54 Miss. 264; *Bradshaw v. South Boston R. R. Co.* 135 Mass. 407; *Frederick v. M., H. & O. R. R. Co.* 37 Mich. 342; *Lake Shore & M. S. R. R. Co. v. Pierce*, 47 id. 277–282; *Chicago, B. & Q. R. R. Co. v. Griffin*, 68 Ill. 499–504; *Hall v. M. & C. R. Co.* 15 Fed. Rep. 57; *Shelton v. L. S. & M. S. R'y Co.* 29 Ohio St. 214; Thompson's Carriers of Passengers, 338.

The following opinion was filed November 25, 1884:

COLE, C. J. The sole question in this case is, Was the rule of damages which was laid down by the learned county court correct, in view of the facts disclosed on the trial?

That rule was, in effect, that the plaintiff was only entitled
to recover the additional fare he had to pay to get from
Clintonville to Oshkosh, with interest.    When the case was
here on a former appeal (54 Wis. 234) we thought the
charge of the court as to the rule of damages incorrect, be-
cause it went upon the hypothesis that the plaintiff was
unlawfully put off the train at the Bear Creek station.    We
held that the plaintiff was not entitled to ride on the second
train upon the trip check which he had received from the
conductor of the first train, and that, under the rules of the
company, the second conductor might demand the additional
fare to his place of destination, and, upon the plaintiff's re-
fusal to pay, might eject him from the train at some usual
stopping-place, using no unnecessary force for the purpose.
We said the second conductor had the lawful right to do
this, and was bound to do it, in obedience to a reasonable
rule of the company which required a passenger to obtain
from his conductor a stop-over check when he desired to stop
before reaching the place to which he had purchased his
ticket; and the mistake or fault of the first conductor in
not giving him, on request, such a check, would not give him
the lawful right to ride on the second train, though he
might recover damages against the company for the wrong-
ful act of the first conductor.    The court below strictly
adhered to this decision, and charged that the plaintiff was
rightfully put off the train at the Bear Creek station by the
second conductor.    And the learned county court seemed to
suppose it legally and logically resulted from that view that
the plaintiff was confined in his recovery to the additional
fare he had been compelled to pay, and interest thereon;
but we do not think that conclusion correct when the other
undisputed facts of the case are considered.

The jury in effect found, in answer to questions submitted,
that the plaintiff purchased a ticket for Oshkosh, which, of
course, entitled him to passage to that place.    Further, that

Conductor Sherman, when he took up this ticket, was informed by the plaintiff that he wished to stop over at Clintonville, and requested the conductor to give him a stop-over check. Thereupon Conductor Sherman gave the plaintiff, doubtless through mistake, a trip check as and for a lay-over check. The plaintiff received this check believing it to be a stop-over check. When he entered upon the second train at Clintonville, the next morning, he had every reason to suppose that he had the proper voucher for a passage on that train to Oshkosh. But after the train started from Clintonville he was told by the second conductor, when his ticket was called for, that he could not ride on his train on the check which he had received .from the first conductor, and that he must either pay his fare to Oshkosh or leave the train. He refused to pay his fare and proceed on his journey, but concluded to obey the order of the conductor and leave the train at Bear Creek. The question then is, Had not the plaintiff the right to adopt this course,— leave the train as he was ordered to do, and hold the company responsible for the fault or mistake of the first conductor? We are clearly of the opinion that he had. And, choosing that alternative, what damages would he be entitled to recover? It seems to us he could recover all such damages as were the direct and natural result of the wrongful act complained of.

It is not entirely clear from the complaint whether the action is for a breach of contract, or for a violation of duty as common carrier, though we assume that it is of the latter character. But it can make no essential difference as to the rule of damages upon the facts proven. Whatever damages the plaintiff can show he sustained, which were the direct and natural consequence of the injurious act of Conductor Sherman, these the plaintiff may recover. The learned counsel for the defendant says that the only natural and legitimate result of that act was to compel the plaintiff to

again pay his fare from Clintonville to Oshkosh. This might have been the only loss the plaintiff sustained from the mistake of Conductor Sherman had he seen fit to pay his fare. But he did not do this, and exercised the option which the law gave him, of leaving the train and looking to the company for redress.

The same counsel further says the plaintiff might have protected himself from all loss or inconvenience arising from the fault or mistake of the first conductor at a trifling expense, and that he failed in a social duty by omitting to do so. The jury found that he had sufficient money with him when on the second train to have paid his fare from Clintonville to Oshkosh. But was he under any legal obligation to pay the additional fare exacted? He had once paid for a ticket to Oshkosh, and claimed the right to ride to his destination. Probably most persons having the ability would, under like circumstances, pay the additional fare rather than submit to the inconvenience and delay of leaving the train at that hour and place. But, as we have said before, we think the plaintiff had the option either to pay or leave the train and resort to his legal remedy. There are men who, in social life and business matters, act upon the maxim, "Millions for defense, but not a cent for tribute;" in other words, men who stand upon their strict legal rights.

There is certainly a class of cases where the law imposes upon a party injured by another's breach of contract or tort the duty of making reasonable exertions to render the injury as light as possible. Counsel have referred to authorities which affirm that rule of law. They have also cited cases which hold that a passenger cannot insist upon remaining on the train without paying fare, in order that force shall be used for his expulsion and then claim damages for the force thus used. But we have not been referred to a case analogous to this, which decides that it was the duty of the plaintiff to have paid the fare exacted and remained on

the train, in order to protect the company against the consequences of the mistake or fault of the first conductor. According to our view, the law imposed upon him no such duty. On the contrary, when he was ordered to leave the train or pay the additional fare, he had an election to leave, or remain on the condition of paying. Having concluded to leave, he has his remedy against the company for his damages, which are not necessarily limited to the additional fare paid subsequently to go to Oshkosh, and interest thereon. The law allows him to recover full compensation for the damages he sustained by reason of the fault of the first conductor.

We feel it but just to observe that the conduct of Bartlett, the second conductor, was most considerate, fair, and honorable. For while insisting that the plaintiff must pay his fare to Oshkosh or leave the train, he, at the same time, told the plaintiff that if he did pay, on the arrival of the train at Oshkosh he would go with him to Conductor Sherman's house, which was only a short distance from the depot, and if Sherman said plaintiff was entitled to passage to Oshkosh he would refund the money exacted. Thus Mr. Bartlett proposed doing all in his power to make the matter right, while he enforced the rules of his company. His conduct in that behalf certainly deserves commendation.

When this case was here on the first appeal, enhanced damages were claimed because the plaintiff was compelled to leave the train at the Bear Creek station in the night, and was exposed to the chilly air, took cold, became sick, etc. It appeared, then, from the plaintiff's own testimony, that before the train left Clintonville the second conductor demanded fare of him and told him he could not ride on the trip check which he held, and that the plaintiff had ample opportunity to leave the train at Clintonville. It was in view of this testimony, and of the plaintiff's refusal either to leave the train or pay his fare, that the remark was made that

plaintiff should not recover for any exposure or sickness which he had brought upon himself by his own foolish and perverse conduct, he having been rightfully put off the train at Bear Creek. On the last trial the jury found that the plaintiff was not notified by Bartlett that he could not ride on his train on the trip check before the train started from Clintonville. This fact was deemed material as bearing on the damages which the plaintiff should recover by reason of the exposure at Bear Creek.

There are many cases cited on the brief of counsel on both sides to sustain their respective positions. While we have examined them, we do not deem it necessary to comment on them here. They are all distinguishable from the case before us.

*By the Court.*— The judgment of the county court is reversed, and the cause is remanded for a new trial.

A motion for a rehearing was denied March 3, 1885. A motion was subsequently made by the respondent to have the judgment against it for costs in this court set off against or applied upon a similar judgment in its favor on the former appeal. The following opinion was filed April 28, 1885:

COLE, C. J. This is a motion to have the judgment for costs in favor of the plaintiff on the second appeal offset or applied on a judgment for costs in favor of the defendant company on a former appeal. It appears from the motion papers that an execution has been issued on the last judgment, which has been returned wholly unsatisfied. We think the company is entitled to have the offset made. Both judgments are in this court and in the same cause, and it is but equitable and just under the circumstances that the costs in favor of one party should be offset against the costs in favor of the other party. *Taylor v. Williams*, 14 Wis. 155; *Mohawk Bank v. Burrows*, 6 Johns. Ch. 317; *Porter*

*v. Lane,* 8 Johns. 357; *People ex rel. Manning v. New York C. P.* 13 Wend. 649; *Nicoll v. Nicoll,* 16 Wend. 446; *Dunkin v. Vandenbergh,* 1 Paige, 622; *Marshall v. Cooper,* 43 Md. 46; *Levy v. Steinbach,* id. 212; *Williams v. Taylor,* 69 Ind. 48; *Lammers v. Goodeman,* id. 76; *Wright v. Mudie,* 1 Sim. & St. 266; *Taylor v. Popham,* 15 Ves. Jr. 72; *Ex parte Rhodes,* id. 539. In the case of *Taylor v. Williams, supra,* a judgment for costs in this court in favor of one party was allowed to be set off against a larger judgment for costs against the same party in the circuit court.

In the case at bar there was an assignment of the judgment by the plaintiff to his attorneys to secure them for their disbursements and advances made for his benefit in the action. But this cannot interfere to prevent the offset from being made. "Where different claims arise in the course of the same suit, or in relation to the same matter, and it is. equitable and just that these equities should be arranged between the parties without reference to the solicitor's or attorney's lien, his lien being only the clear balance due to his client after all these equities are settled, such lien will not prevent the parties from having the mutual demands arranged by setoff as the equities between them shall require, without regard to the lien of the attorney or solicitor." Waterman on Setoff, § 361. The above cases show that the lien of the attorney, or even an assignment of the judgment prior to a motion to have the setoff made, will not defeat the right to the setoff. *Williams v. Taylor, supra; Marshall v. Cooper, supra; Levy v. Steinbach, supra.* The reason is that the assignee and attorney stand in no better position than the judgment creditor himself, and are subject to the same equitable rights which existed in favor of the adverse party. This precise point was considered and decided by this court in the case of *Gano v. C. & N. W. R'y Co.* 60 Wis. 12. In that case the company moved to set off a judgment for costs in its favor against one obtained by the plaint-

iff.    It was insisted that the offset should not be allowed, because the attorney had made advances for printing and other costs, and that his lien was superior to the right of the judgment creditor to have the judgments offset.    But the objection was overruled.    No opinion, however, was filed on the motion.

*By the Court.*— Motion granted.