## POUILIN v. CANADIAN PAC. RY. CO.

*(Circuit Court, E. D. Michigan. October 13, 1891.)*

**CARRIERS OF PASSENGERS—DEFECTIVE TICKET—EJECTION—FORM OF ACTION.**
A passenger paid the price of a railroad excursion ticket from Detroit to Quebec and return, and accepted from the company's agent, without reading it, what the latter represented to be such a ticket. The agent, however, inadvertently stamped upon the return coupon the word "Detroit" above the word "Quebec," instead of *vice versa*, as was necessary to make it valid. On the homeward journey the conductor refused to receive the ticket, notwithstanding the passenger's explanation, and the latter, having no means to pay the cash fare, was put off at a way station, and suffered much humiliation and inconvenience. *Held*, that he was not restricted to *assumpsit* for the breach of contract, but might sue the company in tort for damages.

At Law. Action *ex delicto* by a passenger to recover damages for expulsion from railroad train. On demurrer to declaration.

Plaintiff, on August 29, 1890, applied to defendant's district passenger agent at Detroit for an excursion ticket over defendant's railroad from Detroit to Quebec and return, paid the price therefor, and received from the agent what the latter represented to be such a ticket, which, without reading, plaintiff accepted. In filling out the coupons for the trip for Quebec back to Detroit, the agent inadvertently stamped the word "Detroit" above the word "Quebec," instead of *vice versa*, as was necessary to make the ticket a valid voucher for plaintiff's fare to Detroit. On his homeward journey plaintiff presented his ticket to the conductor, who declined to receive it, notwithstanding plaintiff's explanation, and insisted on payment of the customary fare to Detroit. Plaintiff, having no means to meet this demand, was, about 10 o'clock in the evening, put off from the train at Ste. Anne de Bellevue, in the dominion of Canada, near Montreal, where he was compelled to remain until the next day, when the ticket was accepted for his passage to Detroit. No unnecessary force was used in removing plaintiff from the train. Plaintiff brought this action on the case, claiming that he was greatly mortified and humiliated in the sight of a large number of passengers; that the night was dark, and rain was falling heavily, and there was no hotel or lodging place within a mile of the station where he could procure shelter; that by his expulsion he lost business engagements at Toledo, which he otherwise would have kept, and he was subjected to great inconvenience, and suffered the pain and discomfort of going without food from the time he left Ste. Anne de Bellevue, on his journey homeward, until his arrival in Toledo, the night following that of his expulsion from the train, because the expense of lodging at Ste. Anne de Bellevue, necessitated by his ejection, had exhausted his means. All this the declaration charges to have occurred without "any lack of care on the part of plaintiff, but was the direct result of the carelessness and negligence of defendant's agent at Detroit in selling the plaintiff an incorrect and improper ticket, instead of a correct ticket, such as plaintiff requested and paid for." The damages are laid at $5,000. Defendant demurs to the

declaration, and insists that the action should be laid *ex contractu* for a breach of contract of carriage, not *ex delicto*, as brought.

*Charles T. Wilkins*, for plaintiff.

*Moore & Canfield*, for defendant.

SWAN, J. The declaration in this cause sets forth fully the facts which constitute the plaintiff's cause of action. In substance, it avers the defendant to be a common carrier of passengers between Detroit and Quebec; that its passenger agent at Detroit received plaintiff's money in payment of his fare from Detroit to Quebec and return, in consideration of which the agent delivered to plaintiff a ticket, which purported to be, and was represented by the agent to be, good for plaintiff's passage on defendant's railway to Quebec and back to Detroit; that plaintiff was carried under that ticket to Quebec, but was ejected from the cars of defendant on the return journey, because the ticket was incorrect, and not such as the conductor of the train was authorized to accept for the plaintiff's passage. These allegations are followed by a statement of the damage resulting from his eviction, for which plaintiff asks compensation. There is no express allegation that it was defendant's duty to carry plaintiff under the contract, but that is unnecessary. From the facts stated, the law implies that duty, and that is sufficient. 1 Chit. Pl. 398, 399; *Gladwell* v. *Steggall*, 5 Bing. N. C. 733. The relation of carrier and passenger subsisted between the parties, and the carrier had entered upon the performance of his contract. The plaintiff had paid the fare demanded, and it was the legal duty of defendant, not only to carry him to Quebec and back to Detroit, but to furnish the plaintiff with a proper ticket, which would evidence the holder's right to transport and protect him against an apparently justifiable evasion of that right by the conductor of the train. Whether or not the plaintiff may be held to have been negligent in failing to detect the error in the ticket is not an inquiry here, in the face of the allegation in the declaration, which the demurrer admits, that the eviction of "plaintiff was not due to any negligence on his part." The actual contract between the parties was that pleaded, viz., for his carriage from Detroit to Quebec and return. The primary wrong done to plaintiff was the negligent failure to provide him with a proper ticket evidencing the real contract. As between the conductor and the passenger, the ticket has been held to be conclusive evidence of the rights of the passenger. *Frederick* v. *Railroad Co.*, 37 Mich. 342; *Hufford* v. *Railway Co.*, 53 Mich. 118, 18 N. W. Rep. 580. Yet, as between the company and the passenger, the ordinary ticket is not regarded as conclusive evidence of the contract, but as a mere token or voucher to the carrier's servants, who have the conduct of the train, that the holder has paid his fare. *Quinby* v. *Vanderbilt*, 17 N. Y. 306; *Rawson* v. *Railroad Co.*, 48 N. Y. 212; *Van Buskirk* v. *Roberts*, 31 N. Y. 661; *Henderson* v. *Stevenson*, L. R. 2 H. L. Sc. 470; *Railroad Co.* v. *Harris*, 12 Wall. 65; *Peterson* v. *Railroad Co.*, 80 Iowa, 92, 97, 45 N. W. Rep. 573. While the defect of the ticket presented exempts the conductor from an action for expelling the pas-

senger, or, at least, from exemplary damages, when he acts in good faith, and without unnecessary force, it does not protect the company or its passenger agent from an action for a breach of the contract which the agent was authorized to make, and did make, with the passenger. *Railroad Co.* v. *Pierce*, 47 Mich. 277, 11 N. W. Rep. 157; *Murdock* v. *Railroad Co.*, 137 Mass. 293; *Hufford* v. *Railway Co.*, 53 Mich. 118, 18 N. W. Rep, 580, 64 Mich. 631, 31 N. W. Rep. 544; *Railroad Co.* v. *Carr*, 71 Md. 135, 17 Atl. Rep. 1052. The passenger agent was the company's *alter ego* for the purpose of making the contract of carriage, and for his mistake or negligence in the line of his duty his principal must respond. *Mechanics' Bank* v. *Bank of Columbia*, 5 Wheat. 326; *Bank* v. *Stewart*, 114 U. S. 228, 5 Sup. Ct. Rep. 845; *Railroad Co.* v. *Rice*, 64 Md. 63, 21 Atl. Rep. 97; Cooley, Torts, p. 538; Wood, Mast. & S. p. 640. There was a clear violation of the duty of the carrier to the passenger—an invasion, to the latter's damage, of the right which he had purchased— in negligently subjecting him to the indignity, delay, and discomfort which, on the facts alleged, followed his expulsion. *Railroad Co.* v. *Carr*, 71 Md. 141, 17 Atl. Rep. 1052. For these no recovery could be had in an action of *assumpsit*. *Goddard* v. *Railroad Co.*, 57 Me. 202, *Walsh* v. *Railroad Co.*, 42 Wis. 23. For the redress of these grievances, an action of tort is appropriate. "Declarations against carriers in tort are as old as the law, and continued until *Dale* v. *Hall*, 1 Wils. 281, when the practice of declaring in *assumpsit* succeeded. But this practice does not supersede the other. * * * This was only declaring as usual for four hundred years before *Dale* v. *Hall*." Per BAYLEY, J., in *Ansell* v. *Waterhouse*, 2 Chit. 1. According to Chitty, though *assumpsit* is the usual remedy for breach of duty against carriers and bailees, yet it is clear they are also liable in case of injury resulting from their negligence or breach of duty in the course of their employ. 1 Chit. Pl. 151. When the relation of carrier and passenger is once formed, the law annexes to the contract of the carrier certain duties. For the nonperformance, the passenger may bring an action of tort. The class of cases in which action on the case lies is well stated by LITTLEDALE, J., in *Burnett* v. *Lynch*, 5 Barn. & C. 609:

"When, from a given state of facts, the law raises a legal obligation to do a particular act, and there is a breach of that obligation, and a consequential damage therefrom, although *assumpsit* may be maintained upon a promise implied by law to do the act, still an action on the case founded in tort is the more proper form of action, in which the plaintiff states the facts out of which the legal obligation arises, the obligation itself, the breach of it, and the damage resulting from that breach; for that is the most accurate description of the real cause of action, and that form of action in which the real cause of action is most accurately described is the best adapted to every case."

It is well settled that, when the gist of the action is a tort that arises out of a contract, plaintiff may declare in tort or contract, at his election. The contract in such cases is laid merely as inducement, and as the foundation of the duty in respect to which plaintiff is said to be in default. 1 Chit. Pl. 152, 397; *Emigh* v. *Railroad Co.*, 4 Biss. 114; *Railroad Co.* v. *Constable*, 39 Md. 149; *Saltonstall* v. *Stockton*, Taney, 11, 18.

"Wherever," says Lord Campbell, "there is a contract, and something to be done in the course of the employment which is the subject of that contract, if there is a breach of duty in the course of that employment, the plaintiff may either recover in tort or in contract." *Brown* v. *Boorman*, 11 Clark & F. 43, affirming 3 Adol. & E. (N. S.) 845. The great weight of later authority also affirms the propriety of this form of action in suits against carriers and bailees. It was adopted in all the Michigan cases cited *supra*, and in *Thomas* v. *Railroad Co.*, 72 Mich. 355, 40 N. W. Rep. 463, in which plaintiff sued for ejection from a train. It is said, indeed, in *Frederick* v. *Railroad Co.*, cited *supra*, that, "if the company has, through mistake of its agent, given the passenger the wrong ticket, so that he has been compelled to relinquish his seat, or pay his fare a second time in order to obtain it, he would have a remedy against the company for a breach of contract." But this does not mean, as is evident from the context and the concurring opinions of the judges, that his only remedy is an action of *assumpsit*. The cases of *Railroad Co.* v. *Griffin*, 68 Ill. 499, and *Yorton* v. *Railway Co.*, 54 Wis. 234, 11 N. W. Rep. 432, while denying the plaintiff's right to recover the damages claimed for expulsion from a train, are consistent with the right to sue in tort therefor. In the first, the plaintiff was, as here, inadvertently given the wrong ticket, which the conductor rejected, and demanded his fare. "It was the passenger's duty," says the court, "to pay the fare demanded; and, if the company fails to make suitable reparation, he can maintain his appropriate action." So far as the latter case implies that the expulsion is not the proximate cause of the damages here sought to be recovered, it is not sustained by later authorities. The relation between the tort and its consequences is generally a question of fact, and not of law. *Railroad Co.* v. *Kellogg*, 94 U. S. 474. In the case of *Yorton* v. *Railroad Co.*, *supra*, the report shows that plaintiff refused to pay his fare, though he had the means, and brought upon himself the illness of which he complained by his own foolish and perverse conduct. That case came again before the court, and is reported in 62 Wis. 367, 21 N. W. Rep. 516, and 23 N. W. Rep. 401, and the language relied upon in the first opinion is largely qualified. The case of *MacKay* v. *Railroad Co.*, (W. Va.) 11 S. E. Rep. 737, holds squarely that, when the agent has delivered to the passenger a ticket not answering for the trip, which the conductor refuses to recognize, and, in default of payment of fare, the passenger is put off, the negligence of the agent, and the expulsion of the passenger without unnecessary force, will not be a ground of action against the company as for tort. *Bradshaw* v. *Railroad Co.*, 135 Mass. 407, also holds that an action for tort does not lie for expelling from the car a passenger to whom the company was bound, by an implied contract, to give the proper ticket, but that he must sue in *assumpsit*. These are the only cases in my knowledge holding this doctrine. They are overborne by the great weight of authority to the contrary. The case of *Murdock* **v.** *Railroad Co.*, 137 Mass. 293, where, as here, the agent represented the validity of a ticket which the regulations of the company forbade the conductor to accept, and he put off the

passenger, holds the company liable in tort for the expulsion, and practically overrules the case of *Bradshaw* v. *Railroad Co.*, *supra*. There is nothing in the cases of *Mosher* v. *Railway Co.*, 127 U. S. 390, 8 Sup. Ct. Rep. 1324, and *Boylan* v. *Railroad Co.*, 132 U. S. 146, 10 Sup. Ct. Rép. 50, to the contrary of what is here decided. Both were actions of *assumpsit* for a breach of the contract contained in tickets signed by the carrier and the passenger. In neither case had plaintiff complied with the conditions of the special contract necessary to its validity on his return passage. The ticket expressly provided that "it is not good for return passage unless the holder identifies himself as the original purchaser, to the satisfaction of the authorized agent of the railroad," at a place named, and within a time limited. This plaintiff failed to do. Mr. Justice GRAY, who delivered the opinion of the court, says:

"The unstamped ticket giving plaintiff no right to a return passage, and he having not paid, but absolutely refusing to pay, the usual fare, there was no contract in force between him and the defendant to carry him back. * * * There being no such contract in force, there could be no breach of it; and, no breach of contract being shown, this action of *assumpsit*, sounding in contract only, and not in tort, cannot be maintained to recover any damages, direct or consequential, for the plaintiff's expulsion from the defendant's cars."

There is an obvious and recognized difference between the expulsion from a conveyance of a person who is unprovided with a ticket, and refuses to pay the lawful fare, and that of a passenger who was lawfully on the train or other conveyance, under contract with the carrier. The first has no right of transportation, and his removal from the train in a proper manner and place is not actionable. If the second, for any reason chargeable to the fault of the carrier or its agents, is expelled by the conductor or other servant of the carrier, his clear legal right has been invaded to his damage, and, without fault on his part, he has suffered an indignity, and perhaps incurred a loss, for which some compensation should be made by the wrong-doer. When he can avoid expulsion by a payment of his fare a second time, it is generally and rightly held that he should submit to that course, and reclaim his money from the carrier. This is a concession to the necessities of the carrier's business, because it is impossible, in the safe conduct and operation of railroad trains especially, for a conductor to fully investigate and determine a passenger's right to transportation upon a ticket which he is not authorized to accept. There is no hardship in this requirement to one who has the means to take that course, and he may be rightfully denied damages for an injury he might thus easily have prevented; but, where one has not the means at hand to pay a second time, to refer his expulsion, and its unavoidable consequences, to his impecuniosity, rather than to the fault of the carrier, is to punish the traveler who fails to anticipate and provide against a breach of the contract which he has no reason to expect. The recovery of the sum paid for fare and the expenses of detention are not adequate compensation for humiliating expulsion, the consequential delay and discomfort, and the more serious

consequences to health which often follow exposure to the weather, and for which the courts allow recovery. *Yorton* v. *Railway Co.*, 62 Wis. 367, 21 N. W. Rep. 516, and 23 N. W. Rep. 401; *Railroad Co.* v. *Fix*, 88 Ind. 381, 389; *Craker* v. *Railroad Co.*, 36 Wis. 658. It follows that the action is well brought in tort. The demurrer is overruled, with leave to defendant to plead to the merits within four days.