## A. P. BOWRING Respondent, v. WABASH RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, December 2, 1901.

1. **Trial Practice**: CHANGE OF VENUE: BILL OF EXCEPTIONS. Where a change of venue has been granted and the case is tried in the new county, the court there can not allow an exception taken to the action of the court in which the case was commenced.

2. **Costs**: DISCRETION OF COURT: APPELLATE PRACTICE. The action of the trial court, in matters relating to costs, is discretionary, and will not be interfered with by the appellate court in the absence of abuse.

3. **Common Carriers**: PRACTICE: JUDGMENTS ON PLEADINGS. The action was for damages to goods shipped. The answer pleaded the contract of carriage. There was no reply. *Held*, the execution of the contract was thereby admitted but not the legal effect claimed by the defendant, and, therefore, the defendant was not entitled to judgment.

4. **Common Carriers:** PRIMA FACIE CASE: DEMURRER TO THE EVIDENCE. In an action for damages to goods shipped, through the negligence of the carrier, a prima facie case is made by evidence tending to prove negligence in operating the train and that loss was occasioned thereby, and such evidence will send the case to the jury, however strong may be the contradictory evidence of the carrier's witnesses, since the rule of disregarding testimony, which is in contradiction of obvious physical facts, can not apply.

5. **Common Carriers:** DEMURRER TO THE EVIDENCE: SPECIAL RATE: LIMIT OF RECOVERY. A recital in a contract of affreightment that the rate is a reduced rate, is prima facie evidence of such fact, and such reduced rate is a sufficient consideration for a release of liability in excess of the declared value; but the evidence is reviewed and found to be a sufficient explanation of the recitals in the contract to send to the jury the question as to whether the rate named in the contract is a special or the regular rate.

6. **Common Carriers:** REDUCED RATE: INSTRUCTIONS. An instruction telling the jury that if the rate charged was the only rate defendant gave, then it was not a reduced rate, is approved.

7. **Trial Practice:** INSTRUCTIONS: COMMON FAULT. Where the instructions submit the issues fairly to the jury and whatever fault, if any, is common, there is no ground for complaint.

8. **Trial Practice:** CONDUCT OF COURT: HARMLESS ERROR. Certain conduct of the trial judge in making inquiries of a jury as to whether they had or could agree, is held to be proper, since made in the presence of counsel, and entirely free from harm.

Appeal from Johnson Circuit Court.—*Hon. W. L. Jarrott,* Judge.

AFFIRMED.

*Geo. S. Grover* for appellant; *J. W. Suddath,* of counsel.

(1) The defendant's motion to stay these proceedings until the costs of the former trial had been either paid or secured, should have prevailed under the peculiar circumstances disclosed by this record. Hewitt v. Steele, 136 Mo.

332; Jones v. Barnard, 63 Mo. App. 501; Buckles v. Railroad, 47 Fed. Rep. 424. (2) The defendant was entitled to judgment on pleadings in this case. Section 746, R. S. 1899. (3) The demurrer to the evidence should have been sustained. Paddock v. Railroad, 155 Mo. 524; Kellerman v. Railroad, 136 Mo. 177; Rogan v. Railroad, 51 Mo. App. 665; Duvenick v. Railroad, 57 Mo. App. 550; Wyrick v. Railroad, 74 Mo. App. 406; Bowring v. Railroad, 77 Mo. App. 250; Sections 1193 and 1194, R. S. 1899; Sections 1136, R. S. 1899; Hutchinson on Carriers, secs. 211, 215, and cases cited. (4) The court should have directed a verdict in favor of the defendant at the close of the whole case. See authorities cited under Point 3, supra. (5) The court gave erroneous instructions at the plaintiff's request. See authorities cited, supra. Epperson v. Telephone Co., 155 Mo. 382. (6) The court refused proper instructions asked by the defendant. See authorities cited, supra. (7) The instructions given are in hopeless conflict with each other. Mansur-Tebbetts Implement Co. v. Ritchie, 143 Mo. 587. (8) The communication between the court and the jury was wholly unauthorized and clearly prejudicial to defendant. Sargent v. Roberts, 1 Pickering (Mass.) 337; Chinn v. Davis, 21 Mo. App. 363.

*O. L. Houts* and *Hollis & Fidler* for respondent.

(1) The court of Jackson county and of Johnson county exercised proper discretion in overruling appellant's motion to stay proceedings. Hewitt v. Steele, 136 Mo. 332; Jones v. Barnard, 63 Mo. App. 501. (2) Appellant says it was entitled to judgment on the pleadings, and cites section 746, Revised Statutes 1899. We answer that this is a suit for damages for negligently killing plaintiff's hog. Plaintiff denies the consideration for the release contract

pleaded in answer, not its execution.   (3)   Appellant says
the demurrer to the evidence should have been sustained.
This proposition is too absurd to be dignified by answer.
(4)   The fourth point of appellant is in the same unsavory
condition as the third.   (5)   The court's instructions given
at plaintiff's request were properly given.   Ward v. Railroad,
58 S. W. 28, 158 Mo. 226; Paddock v. Railroad, 155 Mo.
524; Kellerman v. Railroad, 136 Mo. 177; McFadden v. Rail-
road, 92 Mo. 343; Duvenick v. Railroad, 57 Mo. App. 550;
Rogan v. Railroad, 51 Mo. App. 665; Bowring v. Railroad,
77 Mo. App. 250; Conover v. Pac. Express Co., 40 Mo. App.
31; Galt v. Express Co., 48 Amer. Rep. 742; Hance v. Rail-
road, 56 Mo. App. 476.   (6)   The court very properly in-
structed the jury at the instance of defendant and committed
no error in refusing the instructions complained of.

SMITH, P. J.—By reference to 77 Mo. App. 250, it
will be seen that the case then before us is identical with that
presented by the present appeal.   The statement made in
that case will suffice in this.   In the present action the plain-
tiff had judgment below and the defendant appealed.

I.   The defendant seeks a reversal of the judgment on
several distinct grounds, the first of which is that the trial
court erred in denying its motion to require the plaintiff to
pay all the costs that had accrued, before proceeding further
in the cause.   This motion was filed and passed upon in the
circuit court of Jackson county where the action was brought.
Afterwards, the venue of the cause was changed, on applica-
tion of defendant, to Johnson county, where the trial took
place.

It does not appear from the defendant's abstract of the
record that the exception to the action of the Jackson Circuit
Court, in denying the motion, was preserved by a bill of ex-
ceptions filed in that court.   The Johnson Circuit Court could

not allow an exception taken to the action of the Jackson Circuit Court. If we are correct in our reading of the record, the action of the Jackson Circuit Court, on the motion, is not before us for review. Keen v. Schnedler, 92 Mo. 516; Gee v. Railway, 140 Mo. 314, and cases cited.

But if we are in error in respect to the record, and the point is properly before us, we do not think it well taken.

It appears that the plaintiff filed in the Clay Circuit Court his petition in two counts—one in equity to reform the contract of affreightment, and the other at law for negligence of the carrier defendant. At the conclusion of the evidence on the former the plaintiff dismissed the same; and at the conclusion of that on the second, the plaintiff suffered a nonsuit, and after the usual motions took an appeal to this court where the judgment of the trial court was reversed and the cause remanded. Afterwards, there was a retrial of the cause and at the conclusion of the evidence an instruction was given by the court which told the jury that if it found for plaintiff the finding should be limited to ten dollars; and thereupon plaintiff dismissed the suit.

Later on, this suit was begun in Jackson Circuit Court where the said motion was filed and denied. The court, it appears, did require the plaintiff to give security for costs.

It seems the plaintiff was compelled to suffer a nonsuit on the first trial on the law count of his petition, on account of an erroneous adverse ruling of the trial court; and on the second, he dismissed his action not because the court ruled he was not entitled to recover at all, but because it limited his right of recovery by an instruction to ten dollars. It does not appear from the second that the plaintiff's action was wholly destitute of merit. We do not think the case comes within the English rule quoted in Hewitt v. Steele, 136 Mo. loc. cit. 332. The trial courts in such cases are invested with discretionary power, and the reviewing courts will not inter-

fere with the exercise of that discretion unless it appears to have been abused by them. Jones v. Barnard, 63 Mo. App. 501. We are not prepared to say that the Jackson Circuit Court did not exercise a wise and equitable discretion in denying the defendant's motion.

II. The defendant in its answer pleaded a certain contract of affreightment. The plaintiff filed no reply thereto. The defendant now insists that in consequence of this state of the pleadings, it was entitled to judgment thereon. But this insistence can not be sustained. Undoubtedly, under section 746, Revised Statutes 1899, the execution of said contract stood confessed. Indeed, the plaintiff, as we understand him, does not pretend to controvert the existence of the contract, but only the legal effect claimed for it by defendant. It is thus seen that the pleadings only admit the execution of said contract and nothing more. It is idle to claim that on this admission the defendant was entitled to judgment.

III. The defendant contends that the court erred in denying its demurrer to the plaintiff's evidence. The answer of defendant admitted the receipt of the plaintiff's hog for carriage from Liberty Landing to Carrollton, and the loss of it while *in transitu*. In order to establish a prima facie case entitling plaintiff to go to the jury, he was only required to introduce substantial evidence tending to prove the negligence of defendant in operating the train of which the car carrying the plaintiff's hog was a part, in consequence of which the loss occurred.

It will not do to assert, in the face of the testimony of the plaintiff and four of his witnesses, that there was no evidence adduced by plaintiff tending to show that defendant negligently operated said train of cars, or that such negligence was not the proximate cause of the loss of plaintiff's hog. It is true, there was much testimony contradictory of that of plaintiff and his said witnesses introduced by defendant, but it is

not perceived that the rule to the effect that where a party testifies directly in the face of and in opposition to obvious physical facts, neither courts nor juries are bound to stultify themselves by giving credence to such testimony (Payne v. Railroad, 136 Mo. loc. cit. 583-4) has any application to the testimony of the plaintiff and his witnesses. Their testimony was not in the face of and in opposition to obvious physical facts. No court or jury would have been justified in refusing to give credence to their testimony on any such ground. It was ample to carry the case to the jury. The defendant's demurrer was therefore properly overruled.

IV. Defendant further contends that at the conclusion of all the evidence the court should have, by an instruction, requested by it, directed a verdict in its behalf. If, as we have already stated, the evidence was sufficient to carry the case to the jury on the issue of negligence, then the defendant's peremptory instruction was rightly refused since plaintiff was entitled to recover—his damages being determined according to the actual contract entered into for the carriage.

The contract recites that the fifty-five and a half cent rate is a reduced rate expressly agreed upon between the parties and that in consideration thereof the carrier should not be liable for the loss of the shipment in excess of the amount of the valuation thereof as stated in the application. It does not attempt to relieve the defendant carrier of liability for loss incurred by its negligence. The rule is that the recitals of such a contract are prima facie evidence of the truth thereof if sustained by a valuable and legal consideration; or, in other words, the recitals therein that the rate is a special one and lower than that charged on shipments without limitation in value is prima facie evidence of the truth thereof. Wyrick v. Railroad, 74 Mo. App. 406, and cases there cited.

Such recitals are open to explanation or contradiction, but if neither explained away nor contradicted, they become

conclusive. McFadden v. Railroad, 92 Mo. 343; Wyrick v. Railroad, ante.

The recitals in the contract prima facie established the defense relied on by the defendant, that the fifty-five and one-half cent rate was a special and reduced rate, lower than that charged without limitation in value. This special reduced rate was a sufficient consideration for the release of liability in excess of the declared valuation. The recitals of the contract, when introduced in evidence, cast upon the plaintiff the burden of explaining them away or contradicting them, and unless the burden thus imposed was discharged, plaintiff should have been limited in his recovery to the amount of the declared valuation. If there was no evidence introduced, the tendency of which was to explain away or contradict the said recitals, then it was the duty of the court, as a matter of law, to direct that the plaintiff's recovery be limited to the declared value. But if there was any evidence tending to explain away or contradict said recitals, then whether or not the rate charged was a special reduced rate, lower than that charged on like shipments without limitation, was a question of fact to be left to the jury to decide.

Turning to the testimony of the defendant's traveling freight agent and also to that of its local agent at the station, which was to the effect that when the hog was shipped the contract which the plaintiff signed was "the contract we use for shipment of *all live stock*;" that "there *was but one form of stock contract on the Wabash in* 1896 (when plaintiff's hog was shipped) *that applied to shipping of live stock*;" "that when stock was shipped over the Wabash that year the shipper was supposed to sign a contract" and "the rate specified in *the schedule at that time* was fifty-five and one-half cents per hundred pounds on a single hog between Liberty Landing and Carrollton, when released to the valuation of ten dollars;" that for every hundred per cent increase in valuation over ten dol-

lars, up to one hundred dollars, the rate is increased twenty-five per cent. Under the head of live stock from the Western classification it is specified that "live hogs at actual weights will be taken one and one-half first-class rate; thirty-seven cents is first class, that is, *with half added,* hog *in crate* actual weight." There is no other place in the schedule fixing a definite amount on one hog in crate, *that was the only one* fixed rate on crated hog, no other rate to be fixed for that valuation; if the shipper valued the hog higher than ten dollars it would be twenty-five per cent on the ten dollars valuation *added to the regular schedule rate—it would be the regular schedule rate on the higher valuation.* "*There was only one rate on different valuations.*"

The defendant's agent at the shipping point "kept in his office the Western Classification No. 23." There was posted up in that office a notice to the effect: "The tariff and classification at this station in the hands of the agent can be had for inspection by the public." The rate charged was that shown in the classification book shown the plaintiff; that the western classification was a copy of the schedule or tariff rate in force at the time of the shipment which was on "hog in crate actual weight one and one half." "The way we have of arriving at it" is to "take the first class rate and take half of it and add the first-class to that."

If the shipper "failed to give a valuation we could not give him any rate." It affirmatively appears from the testimony of the defendant's freight agents and the rate schedules kept by defendant for public inspection as required by section 2639, Revised Statutes 1889, that the regular schedule rate for "hog in crate, actual weight" was "one and one-half," or as applied to the plaintiff's shipment between the station of shipment and that of consignment, fifty-five and one-half cents. It is clear that the defendant had no other rate on a shipment like that of plaintiff.

It is true that in the contract of affreightment, it is recited that the rate is on a declared valuation by the plaintiff shipper and that such rate is a reduced or special rate given in consideration of the release of the valuation in excess of that declared. But this recital is only prima facie evidence that the rate specified is a reduced or special rate, but it is not conclusive.

The evidence adduced by the defendant, to which reference has just been made, tends to rebut and overthrow the prima facie case made by the contract as to the rate. If the rate was the only or regular schedule rate then in force, it could not be a reduced or special rate. The fact that this rate is denominated in the contract a special or reduced rate, did not make it so. Nor does section 4 of page 1 of defendant's rate book, providing that when a reduced rate is given and not noted on the waybill or bill of lading that the next quoted rate shall be charged, and to prove or establish the fact that the rate charged plaintiff was a reduced or special rate or a rate other than the regular schedule rate. A regular schedule rate could not be converted into a reduced or special rate by so denominating it. It must be a reduced rate in fact. It is difficult to see how, in the face of all of the evidence it can be said that the rate charged was other than the regular schedule rate.

The defendant suggests that the plaintiff's own testimony shows that the rate in question was a reduced rate. This suggestion finds no support in the record. The original bill of exceptions, which has been examined by us, discloses that the plaintiff, when giving his testimony as a witness in the case, was asked by the defendant on cross-examination this question, viz.: "Do you know what rate you got—whether a reduced rate or a limited or lower rate?" And to which he (plaintiff) answered interrogatively in these words: "A reduced rate." There is not one word in the testimony of the plaintiff which

in fairness can be construed into an admission that the rate given him was a reduced or special rate.

The evidence offered by defendant in connection with the contract shows, beyond all doubt, as we think, that the rate charged plaintiff was the regular schedule rate and the only rate then in force on live stock of the kind shipped by plaintiff, or, on a "hog in crate." This was therefore the rate paid by all shippers of such live stock. And since it was the regular schedule and only rate in force on freight of that kind, it could not be a reduced or special rate, whatever it may have been denominated in the contract or elsewhere, and, therefore, the giving of such a rate afforded no consideration for the release of the value of the shipment in excess of ten dollars. It can not, therefore, be said that there was no evidence adduced which tended to explain or contradict the recitals of the contract hereinbefore referred to. The court, as we think, very properly referred the issue to the jury.

V. The defendant objects that the plaintiff's sixth instruction, which told the jury that if it found that the rate charged plaintiff was the *only rate* and the usual schedule rate charged every one for a like shipment, then such a rate was not a reduced rate, etc. If defendant had but one rate, that rate could not be a reduced rate. It could not be both the regular schedule rate and a reduced rate. A reduced rate must be a lesser rate than the regular tariff rate. The instructions were not erroneous in expression. There is nothing said to the contrary in Duvenick v. Railroad, 57 Mo. App. 550.

VI. The plaintiff's first instruction submitted the case to the jury upon the theory of the plaintiff's petition; and the eighth given for defendant very fully submitted the several defenses pleaded by its answer, so that these instructions when taken together and considered as one charge, makes it difficult to see how the issues in any case could be more fully and fairly submitted. The defendant requested no instruction embody-

ing the rule referred to by Judge SHERWOOD in Epperson v. Telegraph Co., 155 Mo. loc. cit. 382, and certainly the plaintiff's instruction is not to be condemned for a like omission. The tenth instruction refused for defendant does not any nearer assert the rule just referred to than one or more of those given for it.

VII. The defendant would have been entitled to the first paragraph of its refused instruction number three had it not been for the second paragraph thereof declaring, as a matter of law, that the plaintiff had failed to show the rate charged was not a reduced rate. Elsewhere herein we have shown that there was substantial evidence adduced which tended to explain and contradict the recitals in the contract relied on by defendant as showing the rate charged was a reduced rate, so that no further notice need be taken of the defendant's complaint of the action of the court in refusing said instruction.

VIII. An examination of the plaintiff's sixth and the defendant's thirteenth and fifteenth instructions has not convinced us that there is any material conflict therein.

IX. Much is said in the brief of defendant's counsel touching the conduct of the trial judge in making certain inquiries of the jury as to whether they had or could agree on their verdict. It will be sufficient to say that all the inquiries addressed by him to the jury were in the presence of its counsel. There is not the slightest ground to complain of his conduct. No possible harm could have resulted to defendant by reason thereof.

The judgment, we think, should be affirmed, and which is ordered accordingly. *Ellison, J.,* concurs; *Broaddus, J.,* not sitting.