THE WABASH RAILROAD COMPANY, Appellant, v. A. P. BOWRING, et al., Respondents.

Kansas City Court of Appeals, March 2 and November 23, 1903.

1. **EXEMPTIONS. Specific Property: Judgments.** The specific property mentioned in section 3159, Revised Statutes 1899, is exempt without the necessity of selection by the debtor and may be sold without becoming subject to execution; and the same is true of a judgment recovered for the loss of such property.

2. ———: **Hogs: Purpose for Which Used.** The statute exempts ten head of hogs for the use of the family for food, but a hog used as a show hog and exhibited over the country for pay does not come within the provisions of the statute.

3. ———: ———: ———. Though such hog is not exempt under section 3159, it may be claimed in a proper case under section 3162; but this privilege is personal and does not pass to an assignee on the sale of the property or of a judgment recovered for its loss; and after sale the vendor can not claim it as exempt so as to protect his vendee.

4. EQUITY: Set-off: Judgments: Insolvency. The mere fact that judgments exist in favor of two parties against each other will not in equity justify a set-off, but where one of the parties is insolvent the right of set-off exists and is governed by the rules applicable to equity proceedings.

5. ———: ———: ———: Mutuality. The right of set-off does not attach to the debt itself or depend upon the mutuality of debts, but upon the situation and rights of the parties between whom it is sought to be enforced, and it is a privilege attaching to the remedy only.

6. EXEMPTIONS: Equity: Law: Set-off. At law, where the right of exemption exists, the right of set-off will not overthrow it; and in equity the chancellor in enforcing the right of set-off will most generally follow the exemption statutes.

7. ———: ———: ———: Assignment to Attorney. Defendant sued plaintiff and the litigation resulted in a judgment for plaintiff for costs. In subsequent litigation over the same matter defendant recovered a judgment against plaintiff, and at once assigned the same to his attorney in payment of his fees. The attorney had knowledge of the whole litigation and the insolvency of the defendant. *Held*, plaintiff was entitled to have its former judgment set off against the defendant's judgment notwithstanding the assignment to the attorney, since it never assented to the assignment to the attorney and the assignment created no lien in his favor superior to the equitable right of the plaintiff to have the judgments set off against each other.

Appeal from Johnson Circuit Court.—*Hon. W. L. Jarrott,* Judge.

REVERSED AND REMANDED.

*Geo. S. Grover* for appellant.

(1) Neither the animal here sued for, nor the judgment in favor of Bowring for $225, is specifically exempt from execution, and hence such an exemption could not pass from Bowring to W. J. Hollis, by assignment, so as to destroy the existing equitable, as well as common-law and statutory, right of set-off in plaintiff's favor. State v. Jungling, 116 Mo. 162. (2) Exemp-

tion of property from execution is a personal privilege, and can only be exercised when the officer calls with the writ, or makes a levy, and then only for the benefit of the claimant and not for the benefit of another. Garrett v. Wagner, 125 Mo. 450; Hombs v. Corbin, 20 Mo. App. 497; Stotesbury v. Kirtland, 35 Mo. App. 148. (3) The defendant Hollis took this assignment subject to plaintiff's right of set-off which had already accrued when the assignment was made. Skinker v. Smith, 48 Mo. App. 91. (4) Having first elected to assign his judgment to Hollis, Bowring can not afterwards claim a qualified interest in it, as he does, as exempt. He can not thus have "two strings to his bow." Nanson v. Jacob, 93 Mo. 331.

*Chas. E. Morrow* for respondents.

(1) The hog which was negligently killed by the railroad company, for which the judgment was recovered, was specifically exempt under the statute. R. S. 1899, sec. 3159. (2) Statutes of Exemption being benevolent in their character, should be liberally construed. Holliday v. Mansker, 44 Mo. App. 465; Wagner v. Carpet Co., 63 Mo. App. 206. The construction should be such as will not allow the statute to be eluded. Wagner v. Carpet Co., 63 Mo. App. 206. (3) The judgment itself is also exempt. When property is exempt from execution and is destroyed or converted without the consent of the owner, the proceeds of the property of a judgment against the wrongdoer for its value, is exempt. Long v. Collins, 15 S. D. 259, 88 N. W. 571; Crawford v. Carroll, 93 Tenn. 661, 27 S. W. 1010; Howard v. Tandy, 79 Texas 450, 15 S. W. 578; Below v. Robbins, 76 Wis. 600, 45 N. W. 416; Wylie v. Grundysen, 51 Minn. 360, 53 N. W. 805; Stebbins v. Peeler, 29 Vt. 289. Analogous to this principle is the doctrine that insurance money or a judgment for insurance on exempt property is also exempt. Ward v. Goggan, 4 Texas Civ. App. 274, 23 S. W. 479; Jones v. Whitesselle, 29 S.

W. 177; Wright v. Brooks, 101 Tenn. 601, 49 S. W. 828; Ellis v. Pratt City, 111 Ala. 629, 20 So. 649; Packing Co. v. Jeffs, 11 Wash. 466, 39 Pac. 962. (4) The judgment being exempt, Bowring had the right to do as he pleased with it, and the defendants, Hollis and Houts, took full title to the share assigned them regardless of Bowring's creditors. Surely authorities on this proposition are unnecessary. And the assignment of half of the judgment by Bowring does not destroy the exempt character of the balance. Jones v. Whitesselle, 29 S. W. 177. (5) The judgment was for only $225, less than the amount exempt by law, and was all the property owned by Bowring. And for that reason no claim was necessary, for the whole of it was set apart by the statute for the use of the debtor. It is only where the amount exceeds the sum exempt by the statute that it is necessary that it should be set apart in order that an assignee may take it free from the claims of creditors. Smyth on Homestead and Exemptions, sec. 537; Wenrick v. Koelling, 21 Mo. App. 133.

ELLISON, J.—This is a proceeding in equity whereby the plaintiff seeks to have its judgment against defendant Bowring set off against his judgment against plaintiff. The trial court refused plaintiff's prayer and it duly appealed to this court.

The case has a lengthy history. It has been twice before in this court. Bowring sued the plaintiff railway company in Clay county for negligence in killing a hog owned by him of enormous size, alleged to weigh 1,500 pounds and to be of the value of $1,500. After one or two trials without result, he failed in the trial court and on appeal here the judgment was reversed and the cause remanded. 77 Mo. App. 250. At the next trial the defendant (Bowring) dismissed his case at the close of the evidence and judgment was rendered against him in this plaintiff's favor for costs amounting to $361.18. Execution was issued against him for such costs and re-

turned *nulla bona.* This plaintiff was then compelled to pay and did pay said sum.

Defendant (Bowring) afterwards brought a new suit in Jackson county, alleging "that on the the 14th day of September, 1896, plaintiff was the owner of an exceedingly valuable animal of the swine species. Said animal was three years of age and was about the weight of 1,500 pounds, measured seven feet and nine inches in length and seven feet six inches around the girth, and was forty-two inches in height. Said animal was used by plaintiff for exhibiting in a covered tent at fairs and other public assemblies for profit and gain, and for the purposes so used and by reason of its enormous size and education was of the reasonable value of fifteen hundred dollars, of all of which defendant had full knowledge."

A change of venue was taken to Johnson county where, in March 1900, plaintiff obtained judgment for $225 as the value of the hog, which he immediately assigned to defendants Hollis and Houts. This judgment was affirmed in this court (90 Mo. App. 324). The parties were thus left, each with a judgment against the other. Plaintiff then instituted this proceeding for the purpose stated at the outset. At the trial it was shown, among other things, that Bowring was the head of a family and that he had no property. It was further shown that he gave written notice of claim to the sheriff of Johnson county January 11, 1902 (about two years after obtaining his judgment in Johnson county and assigning it to Hollis and Houts), to the judgment as selected by him in lieu of other property, he having none other.

The ground upon which defendants seek to sustain the judgment of the trial court is that the hog was specifically exempt fro mexecution against defendant Bowring under section 3159, Revised Statutes 1899, which, in the first and second division thereof exempts the following property when owned by the head of a family: "First, ten head of choice hogs, ten head of choice sheep

and the product thereof in wool, yarn or cloth, two cows and calves, two plows, one ax, one hoe and one set of plow gears, and all necessary farm implements for the use of one man; second, two work animals, and feed of the value of twenty-five dollars for the stock above exempted." The statute, in a subsequent section (3162) then permits the claimant, at his election, to select, in lieu of the property mentioned in these two divisions, any other property not exceeding in value the sum of three hundred dollars. The claim is that a hog, being specifically exempt and being the only property owned by a debtor, is exempt without the necessity of selection by the debtor; and that being exempt it could be sold without becoming subject to execution. We have no doubt of the correctness of that statement of the law.

Defendants are also right in their further contention that being so exempt, a judgment for its value when lost, is also exempt. Crawford v. Carroll, 93 Tenn. 661; Howard v. Tandy, 79 Tex. 450; Below v. Robbins, 76 Wis. 600; Wylie v. Grundysen, 51 Minn. 360; Stebbins v. Peeler, 29 Vt. 289; Thompson on Homesteads, secs. 748, 749. Analogous to this principle is the doctrine that insurance money or a judgment for insurance on exempt property is also exempt. Thompson on Homesteads, section 750; Wright v. Brooks, 101 Tenn. 601; Ellis v. Pratt City, 111 Ala. 629; Puget Sound Packing Co. v. Jeffs, 11 Wash. 466.

But was the particular hog over which this litigation began exempt within the meaning of the statute? We think it was not. The primary purpose in keeping hogs is for food, and evidently, the object of the statute in exempting ten head of hogs was to afford the debtor and his family the use of them for food. That would include, incidentally, their propagation, as well as their sale to others, who would, in turn, use them for such purposes. In each of these uses they are subserving their primary purpose; that is, the animals are kept in existence and they are bartered from man to man for food.

The hog in controversy was one of abnormal size and weight and the value of which consisted, not in either of the purposes just mentioned, but as a show hog, exhibited over the country from place to place in a tent, for pay. The animal was so profitable in that way that it was withdrawn from the ordinary uses to which such animals are put, and devoted to purposes wholly outside those contemplated by the Legislature.

As illustrative of this view of the statute we refer to the provision of the exemption laws of most States that one or more work animals shall be exempt, upon which it is held that if a stallion is kept alone for breeding purposes he would not be within the statute. Robert v. Adams, 38 Calif. 383; Kreig v. Fellows, 21 Nev. 307; Smith v. Dayton, 94 Iowa 102; Allman v. Gann, 29 Ala. 240. In the last case it was said: "If the horse was kept for a business, or livelihood, outside of the comforts, the wants and requirements of the family, and of its several members, then such horse is not exempt."

Notwithstanding a debtor may not be allowed to claim an article of property as specifically exempt under section 3159, yet, as said above, if no claim is made under that section, he may claim the same property under section 3162. In this case though Bowring valued the hog at $1,500 the jury valued it at only $225, and accepting the latter sum as the true value, he insists that as he had no other property, his claim of exemption should be allowed him under the latter section. The difficulty with such claim is that it has been ruled by this court in a well-considered opinion written by Judge HALL that the right to select property under the latter section in lieu of that made specifically exempt under the former, is a personal privilege of the debtor which can not be transferred to another. That if the debtor elects to claim under the latter section and makes his selection of property, he may then sell it and the purchaser will also hold it exempt. But if he sells the property before he makes the selection, the right of selection does not pass

to the purchaser. Hombs v. Corbin, 20 Mo. App. 497, 507. That view was concurred in by Judge PHILLIPS in a separate concurring opinion which by oversight was not published. That case was approved by the St. Louis Court of Appeals in Stotesbury v. Kirtland, 35 Mo. App. 148, 156; and the same is decided in Alt v. Bank, 9 Mo. App. 91; Taylor v. Switzer, 110 Mo. 410; Keithley v. Southworth, 75 Mo. App. 445. And the same proposition of law was clearly stated in Hombs v. Corbin when in this court on the second appeal (34 Mo. App. 393), though by inadvertence, it was said that the contrary was held when the case was first here. That statement doubtless came to be made by the court mistaking, on the second appeal, the date when the notice of claim of selection of exempt property was made. The record shows the date of that notice was April 16, 1886; more than three years *after* the debtor had sold the property.

In this case, Bowring had no property but the hog, and it not being specifically exempt under section 3159, he, ordinarily, had the right to select it (that is, the judgment for its value) under section 3162, but as we have already stated, he transferred his interest in the judgment and thereby all right of exemption ceased under the latter section.

The judgment should be reversed and cause remanded. All concur.

SUPPLETORY OPINION, ON REHEARING.

SMITH, P. J.—The plaintiff's judgment antedated that of the defendant, and the moment the latter was recovered, the defendant being insolvent, the plaintiff's equitable right of set-off attached to it and became a right which a court of equity, when its interference is appropriately invoked, will enforce.

The mere fact that the plaintiff and defendant Bowring each had a judgment against the other was not suf-

ficient to justify a set-off in equity. A set-off is ordinarily allowed in equity only where the party seeking the benefit of it can show some equitable ground for being protected against his adversary's demand. 2 Story's Eq. Juris., sec. 1436. Where a party has a plain redress at law, chancery will generally refuse to assume jurisdiction. Where the demand sought to be set-off is certain and definite and the insolvency of the adverse party is admitted, the chancellor has jurisdiction to retain the matter and give full redress by decreeing a set-off. The rule is founded in reason and justice and will be enforced when a proper case is made out. Field v. Oliver, 43 Mo. 200; Barnes v. McMullin, 78 Mo. 260; Foote v. Clark, 102 Mo. 394; Fulkerson v. Davenport, 70 Mo. 541. And so it has been ruled that if a party seeking the benefit of a set-off show that the adverse party is insolvent, this will be sufficient to justify the intervention of a court of equity to protect him against his adversary's judgment. And such a case being distinctively one of equitable cognizance it is governed by the principles and rules of procedure applicable to proceedings in equity. Gemmell v. Hueben, 71 Mo. App. 291; Wendover v. Baker, 121 Mo. 273.

There is a great variety of cases asserting the rule and illustrating its application but the underlying and persuading principle which moved equity in all of them was the injustice of compelling the defendant to pay the demand against him and make the uncertain claims of insolvency of the plaintiff when called upon with an execution. Barnes v. McMullins, 78 Mo. 260, and cases there cited; Foote v. Clark, 102 Mo. 398; Gemmell v. Hueben, 71 Mo. App. 291. In all these cases there had to be some fact, such as insolvency or non-residence, disclosing the imminent danger of the defendant being compelled to pay without receiving credit for his cross-demand.

"The right of set-off is not an equity which the original debtor may, at all events, assert against the assignor

or assignee of the debt, whether he has or has not, notice of its existence.   There is no such equity to have debts set off against each other, which attaches to the debts themselves and travels with them into whatsoever hands they may come; though it is doubtless true that where there are mutual subsisting debts, and either an express or implied agreement of stoppage *pro tanto* or mutual credit, a court of equity will enforce it against his assignee with notice.'' Wolcott v. Sullivan, 1 Edw. Ch. R. 399.  The right of set-off does not attach to the debt itself nor depend upon the mutuality of the debts in their origin as an inherent quality belonging to such debts, but upon the situation and rights of the parties between whom it is sought to be enforced.   It is a privilege attaching to the remedy only.  Greene v. Darling, 5 Mason 201; Waterman on Set-Off, sec. 17.

It has been held by us that *in actions at law* where the right of exemption exists, the right of set-off will not overthrow it.  Wagner v. Fur. Co., 63 Mo. App. 206; Lewis v. Gill, 76 Mo. App. 504.   And so it has been held in a Pennsylvania case (Wilson v. McElroy, 32 Penn. 82), that in an action against an officer for seizure under an execution of property of a defendant exempt by statute, that the execution debt could not be ''defalked against the damages'' recovered for the wrongful seizure.   And we take it that while the chancellor in enforcing the equitable right of set-off will most generally follow the exemption statutes, yet he will not always do so, for there may be facts and circumstances disclosed which equity and good conscience would require the enforcement of the right notwithstanding the statute.  This principle finds illustration in Duffy v. Duffy, 155 Mo. 144, where an insolvent son, the head of a family who owed a debt of record—a judgment to his deceased father's estate—was denied his statutory exemptions until that debt was paid.   And in Lietman's case, 149 Mo. 112, it was held that the statute of exemptions could not be invoked by an heir to exempt his interest in the real

estate of his deceased father as against a debt he owed the estate. The statute of exemptions, though invoked, was by our Supreme Court held inapplicable in each of these cases. And this ruling, it was declared, rested upon the wholesome principles of right and justice.

It seems that Bowring brought an action against the plaintiff carrier for a breach of a contract of affreightment and failed to make out his case, and judgment was given against him for costs. And in another action on the same contract he succeeded in obtaining judgment. It is now insisted that Bowring is entitled to have his judgment satisfied by plaintiff without satisfying that of plaintiff herein against him. The only ground upon which this insistence rests is that Bowring is the head of a family and therefore his judgment against plaintiff is exempt under the statute.

Bowring may well felicitate himself on the forbearance of the court to require of him, in the action in which he recovered the judgment, to pay the cost that had been adjudged against him in the other suit in which he was unsuccessful as a condition upon which he would be allowed to further prosecute that action. Surely, it can not be that after being allowed to prosecute his several actions without payment of any cost and that after he succeeds in the last one to obtain a small judgment, much less than that previously rendered against him for cost that a court of equity in a proceeding of this kind will refuse to decree that his judgment be set-off by that of the plaintiff herein. It seems that the amount of the cost which Bowring was adjudged to pay plaintiff was due to officers of the court and witnesses and for which the plaintiff was primarily liable under the statute, and that these costs it has paid. The plaintiff has thus paid for Bowring a greater sum than that of his judgment against it, and now to require it to satisfy the judgment against it under such circumstances would be most inequitable and unconscionable.

We can not think that in a case like this the equit-

able right of set-off ought to be denied because the statute of exemption is invoked.   A decree that would in effect require the plaintiff to pay the insolvent Bowring the amount of his judgment against it before he pays that of plaintiff against him, under the circumstances, if not *contra bonos mores,* would, in our opinion, be so inequitable and unjust that a chancellor would hesitate long before ordering it to be entered.   As between plaintiff and Bowring we see no reason why the equitable doctrine may not be appropriately invoked and applied.

The contention of defendants Hollis and Houts that Bowring had a statutory right to claim and hold his judgment against plaintiff as exempt property, was discussed and disposed of adversely to them in the opinion to which this is suppletory, and as no reason is now seen for a different disposition of it, it must stand undisturbed.

But Hollis and Houts claim that the latter made an agreement with Bowring before any of the several actions were brought against the plaintiff that they were to have one-half of whatever the amount of the recovery should be as a fee for their services therein, and that the assignment was made to secure them as to that.   It sufficiently appears from the record that Hollis was entirely familiar not only with the litigation that was carried on between Bowring and plaintiff through all of its various stages, but that he was fully apprised of Bowring's insolvent condition, and he must be held to have had full knowledge of the existence of plaintiff's judgment at the time of the assignment of Bowring's judgment against plaintiff.   In this State such an assignment gives an attorney no lien on the judgment for his fee (Skinker v. Smith, 48 Mo. App. 91) and even in those jurisdictions where such a lien is given, an assignment of the judgment prior to the motion to have the set-off made will not defeat the right of set-off.   Yorton v. Railroad, 62 Wis. 367; Marshall v. Cooper, 43 Md.

46; Levy v. Steinbach, 43 Md. 212; Waterman on Set-Off, sec. 361.   And the reason of the rule is said to be that the assignee attorney stands in no better position than the judgment creditor and is subject to the same equitable rights which existed in favor of the adverse party.   Gano v. Railroad Co., 60 Wis. 12; Yorton v. Railroad Co., ante; Graves v. Woodbury, 4 Hill 559; Hovey v. Morrill, 61 N. H. 9; Rowe v. Langley, 49 N. H. 395.   And so it has been held in New York that the lien of an attorney given by the law of that State has always been regarded as subject to the equitable right of set-off between the parties.   Sanders v. Gillett, 8 Daly 183; Ward v. Wordsworth, 1 E. D. Smith 598; Spencer v. White, 1 Johns. Cases 102; Pinder v. Morris, 3 Caines Rep. 165; People v. Manning, 13 Wend. 647; Brooks v. Hanford, 15 Abb. Pr. 342. And so, too, it has been expressly held in Maine and California, and perhaps elsewhere that if the right of set-off had attached at the time of the assignment, as in this case, the assignee must take the demand *cum onere* with the right of set-off still clinging to it, or, which is the same thing, neither of the parties assigning his judgment to a third party could have defeated the right of the other to have his judgment set off.   McBride v. Fallon, 65 Cal. 301; Pierce v. Bent, 69 Maine 381; Chase v. Woodward, 61 N. H. 79; Langston v. Roby, 68 Ga. 406; Wells, Fargo & Co. v. Clarkson, 5 Mont. 336; Irvine v. Myers, 6 Minn. 562. Crecelius v. Bierman, 72 Mo. App. 355, was a case where there was a motion to set off cross-judgments.   It appears from the report of the case that on a certain date Crecelius had recovered judgment in an action of slander against Bierman for $500, and that afterwards the latter recovered judgment against the former for a much larger amount.   It was sought by Bierman to set-off his judgment against the prior judgment of Crecelius.   It was shown that Crecelius had, prior to the bringing of the slander suit, entered into an agreement with his attorney to give him

for his services in the case fifty per cent of the amount of the recovery, and it was held that this operated as an equitable assignment of one-half of the judgment, citing Schubert v. Hirschberg, 65 Mo. App. 579.　But it was further held that as to the judgment defendant, being only an assignee for a part of the judgment without the consent of the judgment defendant, that the latter was not bound thereby, and that his right to set off the whole judgment by his cross-judgment was not affected by the equitable assignment of his attorney, citing Bank v. Noonan, 88 Mo. 372; Loomis v. Robinson, 76 Mo. 488; Burnett v. Crandall, 63 Mo. 410; Love v. Fairfield, 13 Mo. 301.

In Black on Judgments, section 954, it is said: "Most of the cases [citing them in note 81] seem to agree in the rule that where a judgment recovered by the plaintiff has been assigned to his attorney in good faith, in payment for his services in the action, the court should refuse to set off against it that recovered by defendant against plaintiff prior to the assignment," *provided the attorney taking the assignment had no notice of such prior judgment.* As Hollis had, as has been stated, notice of the prior judgment at the time of the assignment of the latter to him, this rule is inapplicable here.　There is much diversity of opinion among the courts as to when or to what extent or under what circumstances one judgment may be set off against another after the assignment to a third party; as may be seen by reference to the cases cited in note 76 to section 954 of Black on Judgments.　We have not gone to the great length that many of them have in applying the right. We have gone no further than to declare, if the assignee has notice of the other judgment at the time of taking the assignment, that he will take subject to the equitable right to set it off.　Skinker v. Smith, 48 Mo. App. supra.

The plaintiff did not assent to the equitable assignment of Bowring to Hollis of fifty per cent of the amount of the judgment and so it was ruled in Crecelius v. Bier-

man that such assignment was inoperative as to the plaintiff. So that the claim of Hollis and Houts is entitled to no consideration on account of the prior agreement between Bowring and Hollis, as respecting the fee for his legal services. And since Hollis and Houts at the time of the assignment occupied no situation superior to that of any other creditor, and since they took the assignment as a security for the amount of the fee which Bowring owed to them with full knowledge of the existence of the plaintiff's prior judgment to which the right of set off attached, it seems clear to us that the plaintiff's right to set off should have been upheld by the trial court; and accordingly its decree is reversed and cause remanded. All concur.